(881 P.2d 576)
No. 69,979

ROBERT G. MILLER, *Appellant*, v. THE LEE APPAREL COMPANY, INC., and VF CORPORATION, *Appellees*.

Petition for review denied 256 Kan. _____ (November 8, 1994).

1016

Opinion filed September 2, 1994.

*Gene E. Schroer* and *Gary D. White, Jr.,* of Schroer, Rice, P.A., of Topeka, for appellant.

*Douglas M. Greenwald* and *Frank D. Menghini,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees.

Before BRISCOE, C.J., LARSON and ROYSE, JJ.

LARSON, J.: This case involves an appeal from the trial court's granting of summary judgment to claims made under the Kansas Product Liability Act (KPLA), K.S.A. 60-3301 *et seq.*

Robert G. Miller sued The Lee Apparel Company and VF Corporation (Lee Apparel) to recover for damages he suffered

when the lining of a pair of unionall coveralls he was wearing ignited and burned in a gasoline-induced fire.

The incident giving rise to this litigation occurred in October of 1988 when Miller and his wife, Shirley, were attempting to start their pickup.

Miller was wearing a pair of the Lee Apparel coveralls over his work clothes. The coveralls zipped in front and were made of a 65% polyester and 35% cotton outer shell with a quilted nylon lining made with 100% polyester fiberfill. Shirley had purchased them in 1980 or 1981 for her late husband and had given them to Miller when they married.

The fire occurred when Miller was under the hood of the pickup pouring gasoline from a small plastic cup into an uncovered carburetor while Shirley pumped the throttle and attempted to start the engine. Miller heard a "pop" and contemporaneously therewith a ball of fire struck his chest and face.

Miller attempted to protect his face and rolled on the ground while yelling at Shirley to assist him in putting out the fire. The flames were not extinguished until Miller buried himself face down in the dirt and grass. His hair, moustache, and eyebrows were singed. He was burned on his upper chest, neck, and hands.

Miller's suit against Lee Apparel alleged strict liability and negligence because of defective design and failure to warn. He also claimed breach of implied and express warranties.

Lee Apparel answered, denying liability and contending its product was in compliance with applicable federal standards when produced and that Miller had misused the product and failed to exercise due care for his safety.

Discovery disclosed that Vladimir Mischutin, a consultant in the area of flammability and flame retardancy, examined the coveralls, shirt, and undershirt that Miller was wearing when the fire occurred. Mischutin testified the outer shell of the coveralls was not very burned, but the inside lining of the coveralls was totally consumed in some areas. Mischutin observed that some areas of the polyester and cotton shirt that Miller was wearing had melted, but there was really no ignition or burn-through in the shirt.

Mischutin conducted flammability testing on the coveralls pursuant to the standards set forth in the Standards for the Flam-

mability of Clothing Textiles (Flammable Fabrics Act), 16 C.F.R. § 1610 *et seq.* (1994), except he tested only one sample instead of the required five samples, and he separately tested both the outer shell and inner lining while the standards require only the exposed part of the article of wearing apparel to be tested. See 16 C.F.R. §§ 1610.4, 1610.34.

Mischutin stated the outer shell passed the flammability standards, but that the inner lining barely passed. Mischutin also performed a simulated backfire test, which confirmed his opinion that the inner lining of the coveralls was flammable and easy to ignite. Mischutin's testimony was that while the outer fabric and inner lining did pass federal flammability standards, the coveralls "could have been made a lot safer."

Mischutin stated that 100% polyester fiberfill is extremely flammable and there are flame retardant alternatives that are readily available and very economical. Mischutin said that spraying polyester fiberfill with a resin that contains chlorine is a common treatment that will make it more flame retardant and reduce flammability. Mischutin testified that a chemical he invented called Caliban may be used to treat polyester fiberfill to impart flame retardancy, but it was not currently being used by garment manufacturers. Mischutin declared that alternative fabrics which are inherently flame retardant, such as modacrylic fiber, nomex fiber, and PFR rayon fiber, could have been used to construct the inner lining of the coveralls.

Mischutin testified that J.C. Penney, Sears, and Montgomery Ward do not treat the fabrics in their coveralls. Mischutin did not know whether those companies put labels on their coveralls warning that the garments were flammable. Mischutin did not know whether those companies marketed a coverall with a polyester fiberfill in the inner lining.

Mischutin named several companies, including Red Kap Industries, Sager Corporation, Rueben Brothers, Angelica Uniform, Workwear Corporation, and Steel Grip Corporation, that manufacture a flame-retardant coverall which is offered to the general public, but admitted the coveralls are marketed to purchasers as flame retardant.

Lee Apparel had five samples of the coveralls flammability tested by United States Testing Company, Inc., pursuant to 16

C.F.R. § 1610 *et seq.* Only the outer shell was tested. The five samples passed the flammability standard and were classified as having normal flammability.

William G. Gillespie, merchandise manager of career apparel for Lee Apparel, stated the coveralls were probably manufactured in the mid to late 1970's. Gillespie was not aware of any flammability standard for work clothing when the coveralls were manufactured. Gillespie did not know whether there was any difference between the flammability of the outer shell of the coveralls as compared to the inner lining. Gillespie testified that Lee Apparel never sold this coverall as protective clothing and it was marketed as work clothing.

Ray Trowbridge, Director of Treasury Services and Lee Apparel's Secretary, stated in an affidavit that Lee Apparel did not advertise or promote the unionall line of coveralls as flame resistant or flame retardant, or otherwise market the coveralls based on representations about flammability characteristics. Gillespie, however, admitted that he knew the unionall line of coveralls were used by mechanics, farmers, welders, and sportsmen and would be worn by people who would be around flames and sparks.

Lee Apparel employee Michael J. Johnson stated Lee Apparel did perform flammability tests on fabrics but did not conduct flammability testing on the coveralls. Johnson said that Lee Apparel primarily relied on fabric suppliers to perform flammability tests.

Mischutin opined that Gillespie's lack of knowledge of the flammability aspects of the coveralls resulted in Lee Apparel being grossly negligent because of the anticipated usage of the coveralls by persons working around sparks, flames, or gasoline. Mischutin stated that if Lee Apparel did not intend the coveralls to be used as protective clothing, it should have labeled them as flammable and not to be worn near sources of heat, sparks, or flame.

Miller testified that there was nothing about the coveralls that suggested to him they were flame retardant. Miller had not read anything that promised the coveralls would be flame retardant. Shirley did not recall seeing any advertising that suggested the coveralls were flame retardant.

After discovery, Lee Apparel moved for summary judgment, contending Miller had not shown the breach of any warranty. It

further claimed that because the product complied with federal flammability standards, a presumption was created under K.S.A. 60-3304(a) that the coveralls were not defective and Miller had failed to come forward with sufficient evidence to rebut the presumption.

In granting Lee Apparel summary judgment, the trial court concluded:

(1) The absence of Kansas statutory laws or regulatory rules governing flammability of fabrics and clothing apparel indicates this state's decision to abide by the federal standards, and when the presumption of nondefectiveness of K.S.A. 60-3304(a) is applied, Miller failed to present adequate evidence to rebut the presumption;

(2) the opinions of Miller's expert witness, Vladimir Mischutin, were insufficient to create any genuine issue of fact as to whether a reasonable coverall manufacturer would have taken additional safety precautions. Mischutin's statement that the coveralls "could have been made a lot safer" and opinions regarding alternative designs and necessity of warnings were not enough to rebut the presumption;

(3) the coveralls involved were never advertised, promoted, or marketed as being flame retardant or flame resistant, and Lee Apparel had no duty to make its ordinary coveralls flame retardant or to otherwise exceed federal standards;

(4) an individual purchasing an ordinary pair of coveralls has no expectation or right to complain that such apparel is not flame retardant;

(5) a clothing manufacturer has no duty to anticipate that someone wearing work clothes will be in such close contact to flames and fire so as to require the clothes to be flame retardant;

(6) a clothing designer is not a guarantor or insurer of a consumer's safety;

(7) Lee Apparel had no duty to warn of that which is obvious— that clothes might be ignited if exposed to the intense heat and fire of a gasoline-induced carburetor backfire;

(8) the express warranty claim fails because there is no evidence that the coveralls were promoted or marketed as being flame resistant or flame retardant;

(9) the claim based on the implied warranty of fitness for a particular purpose fails because there is no evidence the Millers relied upon Lee Apparel to provide coveralls to wear in the midst of a ball of fire erupting from the carburetor of their pickup or to provide them with flame-retardant or flame-resistant coveralls; and

(10) Miller's claim of breach of implied warranty of merchantability must fail because of lack of evidence of a defect in the coveralls to overcome the presumption of non-defectiveness and lack of evidence of breach of duty or causation.

After the trial court denied his motion to alter or amend the judgment, Miller appealed.

On appeal, Miller contends the trial court erred by granting summary judgment in favor of Lee Apparel on his claims based upon negligence for design defect, failure to warn, and breach of the implied warranty of merchantability.

Miller does not raise as issues on appeal the trial court's denial of his claims based upon strict liability, breach of the implied warranty of fitness for a particular purpose, and breach of express warranty, and those claims are deemed abandoned. *Plummer Development, Inc. v. Prairie State Bank*, 248 Kan. 664, 666, 809 P.2d 1216 (1991) (quoting *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 495, 781 P.2d 1077 (1989), *cert. denied* 495 U.S. 932 [1990]).

Robert's arguments on appeal may be summarized as follows:

(1) The trial court erred in concluding that he had failed to rebut the presumption created by K.S.A. 60-3304(a), thereby barring his action under the KPLA, because he presented evidence of feasible alternative safer designs, evidence that other retailers required the use of these alternative designs in their coveralls, and evidence that Lee Apparel designed, marketed, and sold the coveralls at issue as work clothing it knew would be worn by workers who would be around flames, fire, and sparks;

(2) state law remedies are not barred by Lee Apparel's compliance with the federal Flammable Fabrics Act, and compliance with the Act is only some evidence of care;

(3) the trial court misapplied the summary judgment standards by not giving him the benefit of all reasonable inferences and by not viewing the evidence in the light most favorable to him;

(4) the trial court erred in its determination that Lee Apparel had no duty to warn him of the ease at which the inner lining of the coveralls would ignite and the difficulty of extinguishing the flames once it ignited; and

(5) the trial court erred in its determination that Lee Apparel did not breach the implied warranty of merchantability because Lee Apparel designed and marketed the coveralls for individuals it knew would be around ignition sources.

### Standard of review

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.;* 250 Kan. 754, 762, 863 P.2d 355 (1992).

. "The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.] The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. [Citations omitted.] If factual issues do exist, they must be material to the case to preclude summary judgment." *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

"When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

"As a general rule, the presence or absence of negligence in any degree is not subject to determination by the court on summary judgment, for such a determination should be left to the trier of fact. Only when reasonable minds could not reach differing conclusions from the same evidence may the issue be decided as a question of law." *Gruhin v. City of Overland Park,* 17 Kan. App. 2d 388, Syl. ¶ 3, 836 P.2d 1222 (1992).

### Miller's claim of negligence based upon design defect .

Historically, in Kansas, a manufacturer has a duty to use reasonable care in designing its products so that they will be reasonably safe for their intended use. *Garst v. General Motors Corporation,* 207 Kan. 2, 19, 484 P.2d 47 (1971). A manufacturer also has a duty to warn the user of a product of a dangerous

condition in that product. K.S.A. 60-3305 (manufacturer's duty to warn or protect against danger); *Long v. Deere & Co.*, 238 Kan. 766, 774-75, 715 P.2d 1023 (1986); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 409, 681 P.2d 1038, 1057, cert. denied 469 U.S. 965 (1984); see *Deines v. Vermeer Mfg. Co.*, 755 F. Supp. 350 (D. Kan. 1990).

"To recover for negligence, plaintiffs must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *Dietz v. Atchison, Topeka & Santa Fe Rwy. Co.*, 16 Kan. App. 2d 342, 345, 823 P.2d 810 (1991).

The KPLA became effective July 1, 1981. L. 1981, ch. 231.

"The KPLA is based on the Model Uniform Product Liability Act, 44 Fed. Reg. 62, 714 *et seq.* (1979). The purpose of the Model Act was to consolidate all product liability actions, regardless of theory, into one theory of legal liability. 44 Fed. Reg. 62,720. K.S.A. 1992 Supp. 60-3302(c) provides that all legal theories of recovery, *e.g.*, negligence, strict liability, and failure to warn, are to be merged into one legal theory called a 'product liability claim.' " *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 756, 861 P.2d 1299 (1993).

In *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 126, 795 P.2d 915 (1990), Justice Allegrucci stated:

"The product liability act applies to all product liability claims regardless of the substantive theory of recovery. Therefore, under K.S.A. 60-3302(c), the provisions of the Act apply to actions based on strict liability in tort as well as negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct."

*a. The trial court's conclusion that Miller failed to rebut the presumption in K.S.A. 60-3304(a)*

The provisions of K.S.A. 60-3304(a) which are applicable to this case are as follows:

"When the injury-causing aspect of the product was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, *the product shall be deemed not defective by reason of design or performance,* or, if the standard addressed warnings or instructions, the product shall be deemed not defective by reason of warnings or instructions, *unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions."* (Emphasis added.)

The Kansas Legislature's adoption of this provision arose out of a United States Department of Commerce task force study in the late 1970's, resulting in publication of the Model Uniform Product Liability Act (MUPLA), which was offered for voluntary usage by the states. 44 Fed. Reg. 62,714 (1979). The specific wording of K.S.A. 60-3304(a) precisely follows § 108 [A] of the MUPLA, which is explained as follows:

"Product sellers have contended that it is unfair to deem a product defective when the challenged aspect of that product conformed to an applicable administrative or legislative regulatory standard. They note that considerable time and thought are spent in the development of such standards and that the standards are frequently subject to intense public scrutiny prior to the time of their official adoption. Product sellers point to legislative and administrative standards as a resource to provide some predictability within the scope of product liability law. They contend that it is unfair to allow lay jurors to reevaluate a standard that has presumably been drafted by government experts. Furthermore, some product liability loss prevention experts suggest that a defense based on compliance with standards will create incentives for manufacturers to comply with such standards. See Task Force 'Selected papers' at 266 [Remarks of Professor Alvin S. Weinstein].

"On the other hand, some consumer groups maintain that government standards are often the result of compromise decisions—decisions that are sometimes unduly influenced by industry. These consumer groups point out that some government regulatory bodies may have insufficient personnel or expertise to make independent judgments. The general approach of courts, as well as that embodied in the 'Consumer Product Safety Act,' 15 'U.S.C.' Section 2074[A] [1976] and the 'National Traffic and Motor Vehicle Safety Act,' 15 'U.S.C.' Section 1391 [2] [1976], is that government standards are only minimum standards, and that compliance should not be deemed an absolute defense in product liability actions. See 'Roberts v. May,' 41 Colo. App. 82, 583 P.2d 305, 308 [1978]. In spite of this, some states have enacted statutes that grant this effect to such compliance. See 'N.D. Cent. Code' Section 28-01.1—05[3] [Supp. 1979]; 'Utah Code Ann.' Section 78-15-6 [1977]; 'Colo. Rev. Stat.' Section 13-21-403 [Supp. 1978].

"Nevertheless, case law also suggests that government safety standards are often deemed sound and appropriate for application to tort law claims. See 'Jones v. Hittle Serv., Inc.' 219 Kan. 627, 549 P.2d 1383 [1976] [universally accepted standards for odorizing LP gas outweigh expert opinion]; 'McDaniel v. McNeil Laboratories, Inc.,' 196 Neb. 190, 241 N.W. 2d 822 [1976] [determination of the FDA prevails in absence of proof that the manufacturer furnished incomplete, misleading or fraudulent information]; 'Simien v. S.S. Kresge Co.,' 566 F.2d 551 [5th Cir. 1978] [compliance with flammability standard]; 'Bruce v. Martin-Marietta Corp.,' 544 F.2d 442, 446

[10th Cir. 1976] [claimants did 'not present any more stringent standards which might have been applicable at the time of manufacture'].

"The approach taken in Subsection [A] is based on these cases and on the 'Restatement [Second] of Torts' Section 288C [1965]. When the specific injury-causing aspect of the product conformed to or was in compliance with the legislative or administrative regulatory standard, the product is deemed not defective under Subsection 104[B] when design is relevant, or under Subsection 104[C] or 105[A] when the duty to warn or instruct is relevant, unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions.

"This approach has enabled claimants to prevail when legislative or administrative standards did not meet an appropriate level of safety. For example, in 'Raymond v. Riegel Textile Corp.,' 484 F.2d 1025 [1st Cir. 1973], the claimant was able to show that a standard promulgated under the 'Flammable Fabrics Act' was outdated. *See also* 'Burch v. Amsterdam Corp.,' 366 A.2d 1079 [D.C. 1976] [when manufacturer knows of greater dangers not included in a statutorily mandated warning, it should bring those precautions to the attention of product users]. On the other hand, it recognizes that government safety standards *may* provide an adequate basis for evaluating safety in tort law." 44 Fed. Reg. 62,730-31.

Our reading of the legislative history and the testimony before committees considering the KPLA (S.B. 165; L. 1981, ch. 231) reveals the general intent to strengthen the position of the "product sellers/manufacturers" but indicates no intention for the provisions of § 4(a) (K.S.A. 60-3304[a]) to be construed differently than from the intent and analysis of § 108[A] set forth above. This observation is consistent with that made by Justice Six in *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. at 752, where he stated: "The legislature, in the KPLA, has clearly declared the public policy of the state. The policy is to limit the rights of plaintiffs to recover in product liability suits generally."

The standard for the flammability of clothing textiles is found in 16 C.F.R. § 1610 *et seq.* The flammability standard became mandatory, as amended, in 1954. 16 C.F.R. § 1610, Codification Note, p. 546. There are no Kansas statutes or regulations on the subject of flammability of fabrics or wearing apparel.

The parties agree that the sample tested by Mischutin and the five samples tested by Lee Apparel passed the federal flammability standards. The compliance with the standards set forth in the Flammable Fabrics Act created a presumption under K.S.A. 60-3304(a) that the coveralls were not defective. The presumption

applies to both performance/design and warning/instruction defects. *Alvarado v. J.C. Penney Co.*, 735 F. Supp. 371 (D. Kan. 1990) (quoting the above-stated comments to the MUPLA). Miller is required to rebut the presumption of nondefectiveness to survive Lee Apparel's summary judgment motion.

"A plaintiff may overcome the presumption a product acquires when in compliance with regulatory standards, by establishing 'by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions.'" *Pfeiffer v. Eagle Mfg. Co.*, 771 F. Supp. 1133, 1138 (D. Kan. 1991). "Compliance is not dispositive under Kansas law if the plaintiff shows that a reasonable manufacturer would have done more." *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1443 (10th Cir. 1987), *cert. denied* 486 U.S. 1032 (1988).

Miller emphasizes in his argument that in *Pfeiffer*, Chief Judge O'Connor observed:

"Professor William E. Westerbeke of the University of Kansas School of Law has stated that the burden by which a claimant may overcome the presumption of nondefectiveness is 'relatively weak' because 'any evidence of a feasible alternative safer design, warning or instruction should create a jury question on the rebuttal issue.' W. Westerbeke, *Some Observations on the Kansas Product Liability Act* (Part 2) 54 J.K.B.A. 39 (1985)." 771 F. Supp. at 1138.

This observation must be tempered by the facts of *Pfeiffer* (expert testimony that another gasoline can manufacturer had developed a much safer cap). It must also be understood in the context of the statutory language.

The ultimate required test is that enumerated by the statute. The statute requires a plaintiff who relies on an alternative design to overcome a regulatory safety standard must present evidence that a reasonably prudent product seller could and would have taken additional precautions.

Testimony that a product "could have been made a lot safer" or in alternative ways with different warnings or instructions does not create a jury question under K.S.A. 60-3304(a). See *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 631-32, 549 P.2d 1383 (1976).

*Savina v. Sterling Drug*, 247 Kan. 105, involved the application of K.S.A. 60-3304(a) but is substantially different factually; there the issue related to usage of the drug metrizamide in the per-

formance of a myelogram. The primary issue in *Savina* was the adequacy of the product warnings, and it was held that "plaintiff now has the burden of proving by a preponderance of the evidence that a reasonably prudent product seller would have included additional information in the package inserts." 247 Kan. 128.

Mischutin's testimony in our case that "the product could have been made a lot safer" must be contrasted with the facts of *Savina*, which showed that

"plaintiff presented testimony from three doctors, who criticized the adequacy of information in the package inserts about DER that Sterling Drug received before plaintiff's myelogram. These three doctors testified by deposition that the warnings should have contained a more explicit statement of the severe transient or permanent paralysis that had been experienced by cases included in the DER. Drs. Berger, Schaumburg, and Heinz all testified that the warnings were inadequate." 247 Kan. at 123.

Summary judgment for Sterling Drug was reversed in *Savina*, but the result there was based on the opinion of recognized experts who opined the warnings were inadequate. The testimony of Mischutin is woefully deficient in providing a basis for overcoming the statutory presumption.

In *Goins v. Clorox Co.*, 926 F.2d 559, 562 (6th Cir. 1991), the court examined a Tennessee statute similar to K.S.A. 60-3304(a) and determined that on a motion for summary judgment the nonmovant must " 'make a showing sufficient to establish the existence of an element essential to that party's case.' " It further held that a plaintiff who fails to introduce any evidence to challenge the defendant's compliance with federal regulations must be found to have failed to rebut the presumption that a product was not defective.

We hold that the trial court correctly determined that Miller had failed to overcome the presumption of nondefectiveness created by K.S.A. 60-3304(a). Mischutin gave expert testimony concerning safer alternative designs, but there was absolutely no testimony presented by Mischutin or any other expert that a reasonably prudent manufacturer could and would have taken additional precautions by incorporating any of those safer alternatives into the manufacture of the coveralls in question. Pursuant to the provisions of K.S.A. 60-3304(a), evidence of a safer alter-

native design is not enough. To overcome the presumption of nondefectiveness, a plaintiff must present evidence that "a reasonably prudent product seller could and would have taken additional precautions." Miller has simply failed to present any evidence upon which reasonable minds could differ, and summary judgment was properly granted.

*b. Miller's contention that state law remedies are not barred by the Flammable Fabrics Act and that compliance with the Act is only some evidence of care*

The Flammable Fabrics Act was enacted to provide flammability standards because of the inherent danger of highly flammable fabrics and clothing. Annot., 1 A.L.R. 4th 251, 255. "The purpose of the Flammable Fabrics Act was to prevent excessively flammable fabrics from being marketed in the United States, not to provide a standard of care to be used in flammable fabrics lawsuits." 6 Am. Jur. Proof of Facts 3d, Unreasonable Flammability of Fabric, pp. 195, 243. The Flammable Fabrics Act was not intended to and does not preempt state private civil remedies. *Raymond v. Riegel Textile Corporation*, 484 F.2d 1025, 1028 (1st Cir. 1973); *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727, 734-37 (Minn.), *cert. denied* 449 U.S. 921 (1980).

Several authorities have concluded that compliance with the Flammable Fabrics Act is evidence of due care, but is not conclusive on the issues of negligence, warranty, and strict liability. See *LaGorga v. Kroger Company*, 275 F. Supp. 373, 378 (W.D. Pa. 1967) (jacket in compliance with or not in violation of the federal Flammable Fabrics Act was merely some evidence that the design was not unreasonably dangerous); *Feiner v. Calvin Klein, Ltd., et al.*, 157 App. Div. 2d 501, 502, 549 N.Y.S.2d at 692 (1990) ("clothing manufacturer's compliance with flammability testing method prescribed by federal law does not preclude conclusion that it was negligent"); Annot., 1 A.L.R.4th 251, 255-56 (a manufacturer's compliance with the Flammable Fabrics Act is evidence of the exercise of due care, but does not preclude a finding of negligence under state law); 2A Frumer and Friedman, Products Liability § 18.05, p. 18-89 (1993) ("From the standpoint of evidence in products liability trials, in most states, proof of compliance with . . . governmental statutes and regulations is

admissible but not conclusive on the issues of negligence, warranty, and strict liability."); 63 Am. Jur. 2d, Products Liability § 387 ("A manufacturer's compliance with a statute, regulation, standard, or the like, designed to protect against product-caused injury is not, in itself, sufficient to immunize the manufacturer from negligence liability for such an injury.").

Although state law claims are not precluded by a manufacturer's compliance with the federal Flammable Fabrics Act and compliance with the Act is evidence of due care on the part of the manufacturer, a plaintiff who seeks recovery in a product liability action must rebut the presumption created by K.S.A. 60-3304(a) when the alleged injury-causing aspect of the product is in compliance with legislative or administrative regulatory standards. K.S.A. 60-3304(a) creates a presumption of nondefectiveness that only operates to bar a plaintiff's product liability claim when the plaintiff fails to rebut the presumption.

In this case, to defeat Lee Apparel's motion for summary judgment, Miller was required to rebut the presumption of nondefectiveness created by the coveralls' compliance with the federal Flammable Fabrics Act by presenting evidence that a reasonably prudent product seller could and would have taken additional precautions. *Glenn v. Fleming,* 247 Kan. 296, 305, 799 P.2d 79 (1990) ("On opposing a motion for summary judgment, a party must come forward with something of evidentiary value to establish a material dispute of fact."). See *Savina,* 247 Kan. at 128. Miller simply failed to do so.

### c. Trial court's application of the summary judgment standards

We hold the trial court correctly applied the summary judgment standards when ruling in favor of Lee Apparel. Miller failed to present evidence to rebut the presumption created by K.S.A. 60-3304(a). The required presumptions and inferences were considered by the trial court, as we have likewise done on appeal.

### Miller's claim of negligence based upon failure to warn

In *Richter v. Limax Intern., Inc.,* 822 F. Supp. 1519, 1521 (D. Kan. 1993), the court stated:

"In Kansas, a manufacturer's failure to warn is measured by whether it was reasonable under the circumstances, whether the claim is based on negligence or 'even if the claim is made under the rubric of a strict products

liability defect.' [Citation omitted.] Therefore, the applicable analysis is based on negligence."

"The Kansas Product Liability Act (KPLA), K.S.A. 60-3301 *et seq.*, places limitations on a manufacturer's duty to warn. See K.S.A. 60-3305." *Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. at 748.

"The three K.S.A. 60-3305 categories which exclude a duty to warn are: (a) warnings related to precautionary conduct that a reasonable user or consumer would take for protection, (b) precautions that a reasonable user or consumer would have taken, and (c) obvious hazards which a reasonable user or consumer should have known." 253 Kan. at 757.

The specific wording of K.S.A. 60-3305 provides:

"In any product liability claim any duty on the part of the manufacturer or seller of the product to warn or protect against a danger or hazard which could or did arise in the use or misuse of such product, and any duty to have properly instructed in the use of such product shall not extend: (a) To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances;

(b) to situations where the safeguards, precautions and actions would or should have been taken by a reasonable user or consumer of the product similarly situated exercising reasonable care, caution and procedure; or

(c) to warnings, protecting against or instructing with regard to dangers, hazards or risks which are patent, open or obvious and which should have been realized by a reasonable user or consumer of the product."

There is no duty to warn of dangers actually known to the user of a product, regardless of whether the duty rests in negligence or on strict liability. *Long v. Deere & Co.*, 238 Kan. 766, 773, 715 P.2d 1023 (1986).

A product is not unreasonably dangerous when its degree of danger is obvious and generally known or recognized. *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1413 (10th Cir. 1988). "If a danger is obvious, then its obviousness constitutes a warning, and the product seller's failure to provide a separate warning should not constitute a defect." Westerbeke, *Some Observations on the Kansas Product Liability Act (Part 2)*, 54 J.K.B.A. 39, 44 (1985).

In this case, the coveralls that Miller was wearing ignited while he was attempting to start his pickup by pouring gasoline into

the carburetor, which resulted in a ball of fire exploding towards him. It is obvious that when clothes are exposed to a flame, particularly the intense flame of a carburetor backfire, the garment may catch on fire. Under these circumstances, Lee Apparel had no duty to warn Miller of this obvious danger and had no duty to warn him that the lining of the coveralls would ignite when exposed to a flame and be difficult to extinguish once ignited. A product manufacturer or seller is not an insurer of the safety of persons who use the product. *Garst v. General Motors Corporation*, 207 Kan. 2, 20, 484 P.2d 47 (1971).

The trial court correctly concluded that Miller does not have a product liability claim based on Lee Apparel's failure to warn.

*Claim based upon breach of the implied warranty of merchantability*

Pursuant to K.S.A. 84-2-314(2)(c), for a product to be merchantable it must be "fit for the ordinary purposes for which such goods are used." "To establish a breach of the implied warranty of merchantability under K.S.A. 84-2-314(2)(c) a buyer must show the goods were defective and the defect existed at the time of the sale." *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, Syl. ¶ 4, 657 P.2d 517 (1983). "The Kansas courts have equated the concept of fitness for ordinary purposes with the concept of defect used in tort law." K.S.A. 84-2-314, Kansas Comment 1983.

In this case, Miller has failed to present evidence that the coveralls were defective or unfit for their ordinary purpose as work clothes. He failed to rebut the presumption of nondefectiveness created by K.S.A. 60-3304(a). The coveralls were not marketed or advertised as flame resistant or flame retardant, and Miller had no reasonable expectation that they would provide such protection.

The trial court correctly determined that Miller does not have a claim based upon the breach of the implied warranty of merchantability.

*Causation*

Finally, although this argument was not central to the trial court's opinion and is not the basis for our decision herein, Miller did not come forward with any evidence that any injury-causing aspect of the coveralls was the cause of his burns. Miller presented

no evidence that any of his burns and injuries were attributable to burned clothing as opposed to the results of a ball of fire striking his body. Mischutin's testimony that while the lining of the coveralls was burned, the shirt under the coveralls next to Miller's skin was not burned refutes the claim that the coveralls were the cause of Miller's injury.

"Regardless of the theory upon which recovery is sought for injury in a products liability case, proof that a defect in the product caused the injury is a prerequisite to recovery." *Wilcheck v. Doonan Truck & Equipment, Inc.*, 220 Kan. 230, Syl. ¶ 1, 552 P.2d 938 (1976).

Affirmed.