OPINION OF THE COURT
Ariel E. Belen, J.
In this action to recover damages for personal injuries, third-party defendants Crantex Fabrics, a division of Cranston Print Works Company, and Cranston Print Works Company (hereinafter collectively referred to as Cranston) move for summary judgment dismissing plaintiff’s complaint. Defendant/third-party plaintiff Hymil Manufacturing Company, Inc. (Hymil) cross-moves for an order, pursuant to CPLR 3025 (b), granting it leave to amend its answer to assert an affirmative defense that plaintiff’s causes of action are preempted by the Federal Flammable Fabrics Act (15 USC § 1191 et seq.) (FFA) and, upon such amendment, granting it summary judgment dismissing the complaint.
The background of this matter is as follows: On October 11, 1991, plaintiff, while in the process of lighting Sabbath candles, allegedly suffered severe and extensive burns when the dress she was wearing ignited and burned rapidly. Said dress was al *463 legedly manufactured by Hymil and comprised of fabric manufactured by Cranston. Hymil sold the dress to plaintiffs mother, who gave the dress to plaintiff as a gift.
Plaintiff brought this action against Hymil, asserting causes of action sounding in negligence, breach of express warranty, breach of implied warranty, and strict products liability. Plaintiff alleges that Hymil was negligent in the manufacturing, design, production, and selling of the garment; in allowing the garment to be marketed and sold; and in failing to warn plaintiff of the garment’s flammability, i.e., its proclivity to catch on fire and its tendency to burn rapidly. Plaintiff further alleges that the garment failed to satisfy the applicable Federal flammability standards, and that Cranston and Hymil violated the FFA.
Hymil has commenced a third-party action against Cranston, seeking contribution, indemnification, and recovery for breach of express and implied warranties. The twelfth affirmative defense contained in Cranston’s answer to the third-party complaint asserts that plaintiff’s causes of action are preempted by the FFA and the regulations promulgated thereunder.
The instant motion and cross motion seek summary judgment dismissing plaintiff’s complaint on the ground that it is preempted by the FFA. Congress included an explicit preemption provision in the FFA. 15 USC § 1203 (a), in pertinent part, provides:
" § 1203. Preemption of Federal standards
"(a) Standards or regulations designed to protect against same risk as State standards or regulations; identical State standards * * * whenever a flammability standard or other regulation for a fabric, related material, or product is in effect under this Act * * * no State or political subdivision of a State may establish or continue in effect a flammability standard or other regulation for such fabric, related material, or product if the standard or other regulation is designed to protect against the same risk of occurrence of fire with respect to which the standard or other regulation under this Act * * * is in effect unless the State or political subdivision standard or other regulation is identical to the Federal standard or other regulation.”
Cranston and Hymil argue that the dress satisfied the applicable Federal flammability standard. They assert that since the fabric was a cotton blend which weighed 2.6 ounces or more per square yard, it was exempt from any requirement for *464 testing for flammability, and that, instead, Cranston was only required to file a "continuing guaranty” for the fabric with the Consumer Product Safety Commission (CPSC) (see, 16 CFR 1610.37 [d] [1]). Such "continuing guaranty” is a written guaranty under the FFA which states that Cranston "guarantees that with regard to all * * * fabrics * * * marked * * * by [Cranston] * * * reasonable and representative tests as prescribed by the [CPSC] have been performed, which show that the * * * fabrics * * * conform to * * * the [applicable] flammability standards.”
Additionally, Cranston asserts that it nonetheless performed the statutory flammability testing procedure on the fabric at issue by testing six separate specimens from the same G-lot of fabric that comprised the dress, following the testing standards set forth under 16 CFR 1610.1 et seq. as promulgated pursuant to the provisions of the FFA, and that the fabric complied with the CS 191-53 testing flammability standard enacted by Congress as part of the FFA. Cranston and Hymil thus argue that inasmuch as they have complied with the FFA, plaintiff s State common-law action is preempted since it would impose a standard not identical to the Federal standard.
Plaintiff contends that the particular fabric making up the dress she was wearing was never tested by Cranston, that the fabric was treated with a print paste, and that the fabric was not tested after it had been treated with such print paste. She asserts that the product entered the marketplace solely by the "continuing guaranty” exemption, and she disputes the contention of Cranston and Hymil that they complied with the FFA. She argues that the dress did not conform to the standards of the FFA, and that, in any event, the. preemption provision of the FFA does not indicate that Congress intended to preempt an injured person’s right to seek damages for her injuries under State law.
While there have been some cases which have addressed the issue of whether the FFA preempts State , common-law actions (see, Raymond v Riegel Textile Corp., 484 F2d 1025; Wilson v Bradlees of New England, 1995 WL 688959 [US Dist Ct, D NH, DeClerico, J.]; Feiner v Calvin Klein, Ltd., 157 AD2d 501; Sherman v Lowenstein & Sons, 28 AD2d 922; Davis v New York City Hous. Auth., Sup Ct, Queens County, Jan. 2, 1996, Price, J., index No. 16733/93; Morrow v Mackler Prods., Sup Ct, NY County, Aug. 22, 1995, Schoenfeld, J., index No. 109601/93; Perez v Mini-Max Stores, Sup Ct, Kings County, July 5, 1995,1. Aronin, J., index No. 25411/93; Torres v Union Underwear Co., *465 Sup Ct, Ulster County, May 21, 1990, Torraca, J.; Miller v Lee Apparel Co., 19 Kan App 2d 1015, 881 P2d 576; Gryc v Dayton-Hudson Corp., 297 NW2d 727 [Minn], cert denied 449 US 921), no case addressing this issue has been decided since the United States Supreme Court’s recent decision in Medtronic, Inc. v Lohr (518 US —, 116 S Ct 2240 [1996]).
Cases decided prior to Medtronic (supra), which have held that the FFA preempts State common-law actions, heavily relied upon Cipollone v Liggett Group (505 US 504 [1992]; see, Wilson v Bradlees of New England, supra; Davis v New York City Hous. Auth., supra; Morrow v Mackler Prods., supra; Perez v Mini-Max Stores, supra). However, the Medtronic decision narrowly limits the holding of Cipollone, and casts doubt on cases which find preemption by broadly reading Cipollone. Thus, the court must consider the question of whether the FFA preempts common-law State actions in light of the recent holding and guidelines set forth in Medtronic.
In Medtronic (supra), the United States Supreme Court rejected a broad construction of the preemption provision in the Medical Device Amendments of 1976 (MDA) (21 USC § 360k [a]). The plaintiffs in that case sued the manufacturer of a pacemaker lead, a class III medical device, alleging State law claims of negligence and strict liability. The manufacturer contended that such causes of action were preempted by the MDA. The United States Supreme Court found, however, that said plaintiffs’ causes of action were not preempted by the MDA.
The United States Supreme Court in Medtronic (supra), in rejecting a broad reading of the preemptive statute, distinguished Cipollone (supra), stating that "[t]he pre-emptive statute in Cipollone was targeted at a limited set of state requirements — those 'based on smoking and health’ — and then only at a limited subset of the possible applications of those requirements” (supra, 518 US, at —, 116 S Ct, at 2252). It held that the MDA would preempt a State or local requirement only if specific counterpart regulations or requirements which are applicable to a particular device exist (supra, 518 US, at —, 116 S Ct, at 2257). Thus, the United States Supreme Court ruled that a State law of general applicability would not be preempted except where it has " 'the effect of establishing a substantive requirement for a specific device’ ” (supra). In making such ruling, the United States Supreme Court noted that "[i]t will be rare indeed for a court hearing a common-law cause of action to issue a decree that has 'the effect of establishing a substantive requirement for a specific device’ ” (supra, 518 US, at —, 116 S Ct, at 2259 [citation omitted]).
*466 The United. States Supreme Court also found in Medtronic (supra) that "[njothing in § 360k denies [a State] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements” (supra, 518 US, at —, 116 S Ct, at 2255). Similarly, where a State cause of action seeks to enforce or alleges a violation of the FFA’s flammability standards, that claim does not impose a standard which is not identical to the Federal standard. Thus, to the extent that plaintiffs State law action herein alleges noncompliance with Federal standards or requirements, it is not preempted.
However, to the extent that plaintiff’s State common-law claims for negligence, strict products liability, and breach of warranties may be based on a flammability standard not identical to the applicable Federal flammability standard, the court must determine the question of whether 15 USC § 1203 (a) bars plaintiff from maintaining such claims.
Since 15 USC § 1203 (a) is an express preemption provision, i.e., it expressly addresses its intended preemptive scope, this court is presented with the task of interpreting whether the FFA expressly preempts State law (see, Cipollone v Liggett Group, supra, at 517). In making such interpretation, the court notes that "[t]here is a strong presumption against finding that state law is preempted by federal law” (Committee of Dental Amalgam Mfrs. & Distribs. v Stratton, 92 F3d 807, 811; see also, Chemical Specialties Mfrs. Assn. v Allenby, 958 F2d 941, 943, cert denied sub nom. Chemical Specialties Mfrs. Assn. v Book, 506 US 825). In Medtronic (supra, 518 US, at —, 116 S Ct, at 2250, quoting Rice v Santa Fe El. Corp., 331 US 218, 230), the United States Supreme Court stated: "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has 'legislated * * * in a field which the States have traditionally occupied’ * * * we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.’ ”
The court’s analysis of the scope of a statute’s preemption is further guided by the congressional purpose in enacting the statute (Medtronic, Inc. v Lohr, supra, 518 US, at —, 116 S Ct, at 2250). The United States Supreme Court in Medtronic (supra, 518 US, at —, 116 S Ct, at 2250-2251, quoting Gade v National Solid Wastes Mgt. Assn., 505 US 88, 98, 111) noted that: "Congress’ intent * * * is discerned from the language of *467 the pre-emption statute and the 'statutory framework’ surrounding it * * * [and] the 'structure and purpose of the statute as a whole’ * * * as revealed not only in the text, but through the reviewing court’s reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.”
Cranston and Hymil argue that the plain language of 15 USC § 1203 (a) expressly preempts plaintiff’s State common-law causes of action because the phrase "flammability standard or other regulation” encompasses standards applied in State common-law actions. They contend that such language is analogous to that contained in the preemption provisions at issue in Cipollone (supra) and CSX Transp. v Easterwood (507 US 658), which were determined by the United States Supreme Court to preempt standards applied in State common-law actions.
There is, however, a significant substantive difference between the preemption provision contained in 15 USC § 1203 (a) from the provisions at issue in Cipollone (supra) and CSX Transp. (supra). Section 1203 (a) refers only to "standard[s] or other regulation[s]” as opposed to State "law” as a target of Federal preemption, and thus, is nowhere near as broad as the language contained in the provisions at issue in those cases. In fact, in 1976, Congress amended the predecessor of section 1203 (a), which had mandated preemption of "any law of any State or political subdivision thereof inconsistent with” the provisions of the FFA. The replacement in the current version of the statute of the term "law” with "flammability standard or other regulation” indicates that Congress sought to restrict the preemptive scope of the statute so as to only preempt inconsistent State statutes or administrative promulgations rather than State common law.
An examination of the basic purpose of the legislation as well as the legislative history of the FFA also indicates that Congress did not intend for 15 USC § 1203 (a) to mandate the preemption of State common-law claims. The legislative history of the FFA reveals that the FFA was intended to increase the protection of consumers and reflected Congress’ concern over the plight of burn victims (see, Raymond v Riegel Textile Corp., supra, 484 F2d, at 1027). The FFA "was enacted to provide flammability standards because of the inherent danger of highly flammable fabrics and clothing” (Miller v Lee Apparel Co., 19 Kan App 2d 1015, 1028, 881 P2d 576, 586, supra).
*468 " 'The purpose of the [FFA] was to prevent excessively flammable fabrics from being marketed, in the United States, not to provide a standard of care to be used in flammable fabrics lawsuits’ ” (supra, quoting 6 Am Jur Proof of Facts 3d, Unreasonable Flammability of Fabric, at 243).
There is no statement in the legislative history of the FFA which indicates that it was Congress’ intent to preclude private relief for potential victims of accidents involving flammable fabrics. However, the FFA, like the MDA at issue in Medtronic (supra), contains no explicit private cause of action against manufacturers and there is no suggestion that the FFA created an implied private right of action for those harmed in accidents involving flammable fabrics. Thus, preemption of State common-law actions would bar most, if not all, relief for persons injured by flammable fabrics.
Cranston’s and Hymil’s construction of 15 USC § 1203 (a) "would therefore have the perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation” (Medtronic, Inc. v Lohr, supra, 518 US, at —, 116 S Ct, at 2251) in order "to protect the public from the danger surrounding the use in wearing apparel of highly flammable textiles of the types which have caused either bodily injury or death to numerous individuals” (HR Rep No. 2630, 83rd Cong, . 2d Sess [1954], reprinted in 1954 US Code Cong & Admin News 3132 [repeating in substance the Senate committee report] [S Rep No. 1323, 83rd Cong, 2d Sess (1954)]).
The court further notes that some of the cases which have directly addressed the issue of whether the FFA preempts State private civil remedies have specifically held that the FFA was not intended to and does not preempt State common-law actions (see, Raymond v Riegel Textile Corp., supra, 484 F2d, at 1027; Miller v Lee Apparel Co., supra, 19 Kan App 2d, at 1028, 881 P2d, at 586; Gryc v Dayton-Hudson Corp., supra, 297 NW2d, at 734-737).
In New York, prior to the United States Supreme Court’s Cipollone decision (supra), the Appellate Division, First Department, held in Feiner v Calvin Klein, Ltd. (157 AD2d, supra, at 502) that while compliance with the FFA "may constitute some evidence of due care, it does not preclude a finding of negligence” (see also, Sherman v Lowenstein & Sons, 28 AD2d 922, supra).
While, as noted above, there are some New York State Supreme Court cases which, following Cipollone (supra) and *469 relying upon it, found a broad, sweeping preemption by the FFA of State common-law claims (Davis v New York City Hous. Auth., supra, Sup Ct, Queens County; Morrow v Mackler Prods., supra, Sup Ct, NY County; Perez v Mini-Max Stores, supra, Sup Ct, Kings County; Torres v Union Underwear Co., supra, Sup Ct, Ulster County), in view of the United States Supreme Court’s recent narrow construction of the MDA’s preemption clause in Medtronic (supra), this court finds that these cases, decided prior to Medtronic, are inconsistent with the reasoning and holding of Medtronic and should no longer be followed. Thus, based upon the United States Supreme Court’s rationale and the guidelines set forth in Medtronic, this court finds that the FFA does not preempt State common-law actions. Thus, Cranston’s motion and Hymil’s cross motion, insofar as they seek summary judgment dismissing plaintiff’s complaint on the ground that it is preempted by the FFA, must be denied.
With respect to Hymil’s cross motion insofar as it seeks leave to amend its answer to assert an affirmative defense that plaintiff’s causes of action are preempted by the FFA, the court notes that while leave to amend an answer, pursuant to CPLR 3025 (b), should be freely granted, such leave should be denied where the proposed amendment is totally devoid of merit or is palpably insufficient as a matter of law (McKiernan v McKiernan, 207 AD2d 825; Staines v Nassau Queens Med. Group, 176 AD2d 718; Hauptman v New York City Health & Hosps. Corp., 162 AD2d 588; DeGuire v DeGuire, 125 AD2d 360). Therefore, inasmuch as the court finds that Hymil’s proposed affirmative defense is devoid of merit, an order denying Hymil leave to amend its answer to assert such defense is warranted.
It is noted, however, that, as contended by Hymil and Cranston, plaintiff has failed to set forth the terms of any express warranty upon which she relied, which was made and breached by Hymil. Thus, summary judgment dismissing plaintiff’s cause of action against Hymil for breach of an express warranty must be granted (see, Moy Acres Farms v Agway, Inc., 212 AD2d 832, 833; Copeland v Weyerhaeuser Co., 124 AD2d 998).
Accordingly, Cranston’s motion and Hymil’s cross motion are denied insofar as they seek summary judgment dismissing plaintiff’s complaint on the ground that it is preempted by the FFA. Hymil’s cross motion is also denied to the extent that it seeks leave to amend its answer to assert an affirmative defense that plaintiff’s causes of action are preempted by the FFA. *470 Cranston’s motion and Hymil’s cross motion are granted insofar as they seek summary judgment dismissing plaintiffs cause of action for breach of an express warranty.