UNITED STATES of America, Plaintiff–Appellee,

v.

William COHEN, Defendant–Appellant.

No. 91–1131.

United States Court of Appeals, Sixth Circuit.

Argued July 18, 1991.

Decided Aug. 6, 1991.

Elizabeth W. Wallace, Asst. U.S. Atty., Flint, Mich. (argued and briefed), for plaintiff-appellee.

Paul D. Muller, Southfield, Mich. (argued and briefed), for defendant-appellant.

Before MERRITT, Chief Judge, KEITH, Circuit Judge, CELEBREZZE, Senior Circuit Judge.

MERRITT, Chief Judge.

William Cohen has appealed his jury conviction and sentence for duplicating and distributing copyrighted movies in violation of 17 U.S.C. § 506 and 18 U.S.C. §§ 2318–2319. Cohen raises four claims on appeal, two with regard to his trial and two with regard to his sentence. He claims first that the evidence was insufficient to support his conviction, and he claims next that the District Court erred in admitting into evidence a consent judgment from the companion civil copyright infringement suit. Further, he claims that the District Court erred in enhancing his sentence under § 3B1.1(c) of the Sentencing Guidelines because he was neither the manager nor supervisor required by the Guidelines. Last, he claims that the District Court erred in determining the value of the 895 infringing motion picture videocassettes for sentencing purposes.

We affirm Cohen's sentence and conviction because none of the issues raised merits relief. The jury had sufficient evidence to convict Cohen on all nine charged offenses, and consent judgments have been admitted into evidence in criminal trials in other circuits. The Sixth Circuit requires only that two culpable persons be involved in order to enhance a sentence for a managerial or supervisory role in the offense, and the method used by the District Court to determine the value of the infringing videocassettes was not clearly erroneous.

A federal grand jury indicted Cohen in 1990 on nine counts of violating the criminal copyright laws.[1] The indictment charged Cohen with illegally copying, labeling and distributing videocassettes of movies through his store, Front Row Video, located in Burton, Michigan. The indictment followed an investigation conducted by the Motion Picture Association of America and its member companies which led to the seizure of 939 videocassettes and six videocassette recorders from the store.

Cohen requested a jury trial, and during the trial the government presented eight witnesses from the film companies owning the copyrights to the allegedly copied movies. The witnesses identified the copyrights held by their respective companies and explained the special characteristics of their respective copyrights and videocassette casings. The witnesses compared the authorized copyrights to representative videocassettes seized from Front Row Video

---

**1.** 17 U.S.C. § 506 provides, in pertinent part:

(a) Any person who infringes a copyright willfully and for purposes of commercial advantage or private financial gain shall be punished as provided in section 2319 of title 18.

(c) Any person who, with fraudulent intent, places on any article a notice of copyright or words of the same purport that such person knows to be false, or who, with fraudulent intent, publicly distributes or imports for public distribution any article bearing such notice or words that such person knows to be false, shall be fined not more than $2500.00.

18 U.S.C. § 2318 provides, in pertinent part:

(a) Whoever ... knowingly traffics in a counterfeit label affixed or designed to be affixed to ... a copy of a motion picture ... shall be fined not more than $250,000.00 or imprisoned for not more than five years, or both.

18 U.S.C. § 2319 provides, in pertinent part:

(a) Whoever violates section 506(a) of title 17 shall be punished as provided in subsection (b) of this section and such penalties shall be in addition to any other provisions of title 17 or any other law.

(b) Any person who commits an offense under subsection (a) of this section—

(1) shall be fined not more than $250,000.00 or imprisoned for not more than five years, or both, if the offense—

(B) involves the reproduction or distribution, during any one-hundred-and-eighty-day period, of at least sixty-five copies infringing the copyright in one or more motion pictures or other audiovisual works.

and identified the Front Row copies as unauthorized both in casing and labeling. The government also presented two technical experts who testified with regard to electronic patterns found on videocassettes. These witnesses explained that each videocassette has only one set of "switch-points" when viewed on a cross-pulse monitor but that a videocassette copy will have multiple sets of switch-points. They explained further that they had examined the videocassettes seized from Front Row Video and found all but twenty-one to be copies. Finally, they testified that they were able to segregate one set of copies into three identifiable groups of five—consistent with the conventional copying arrangement of having six videocassette recorders wired together with one "master" producing five additional copies in six machines.

The government also presented testimony from former employees of Front Row Video, and one witness testified that blank tapes were regularly delivered to the store. In addition, she testified that Cohen kept five or six videocassette recorders in his office. Last, the government presented testimony from Clinton Beach. Beach testified that he made labels for Cohen by photographing original cassette casings and printing labels from the photographs. He testified as well that he saw these labels affixed to videocassettes offered for rent in Front Row Video.

No government witness actually saw Cohen make the unauthorized copies seized from the store, and Cohen emphasized this lack of proof. Cohen argued that he taped weddings and other special occasions in addition to renting out movie videocassettes at Front Row Video. He argued as well that Front Row repaired videocassette recorders and traded its stock of videocassettes with other stores, which explained the frequent delivery of videocassettes to the store. Thus he requested a directed verdict, but the District Court denied his request. The jury convicted Cohen on all nine counts, and the District Court sentenced Cohen to eighteen months imprisonment on each count to run concurrently, a period of supervised release and other special assessments. He has appealed.

Cohen has raised four claims on appeal. He claims first that the evidence was insufficient to support his conviction. Next, he claims that the District Court erred in admitting into evidence the consent judgment from the companion civil copyright infringement suit. He claims further that the District Court erred in enhancing his sentence because he was not a manager or supervisor as required by the Guidelines. Last, he claims that the District Court erred in determining the value of the 895 infringing videocassettes for sentencing purposes.

■ Cohen argues that the evidence offered by the government was insufficient to support his conviction, and he argues that the District Court erred in denying his motion for a directed verdict following the presentation of the government's case-in-chief. Our test for both claims is the same: we consider the evidence—whether direct or circumstantial—and all reasonable inferences in the light most favorable to the government. If any rational trier of fact might have fairly found guilt beyond a reasonable doubt, then we must affirm the denial of the motion for acquittal or the insufficiency of the evidence claim. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Pennyman*, 889 F.2d 104 (6th Cir.1989).

Cohen offers two arguments in support of his claim. First, he argues that the government failed to show that he lacked authorization to make copies of and rent any of the motion pictures listed in the indictment. Second, he argues that the government failed to show that the allegedly unauthorized copies were not subject to a first sale, *i.e.*, that Cohen did not distribute a lawfully obtained copy.

■ Cohen cites no case law in support of his first argument, which is unsurprising because copyright law reserves the rights of reproduction and distribution to the copyright holder. *See* 17 U.S.C. § 106 (listing exclusive rights in copyrighted works). Although the government bears the burden of proving the elements of each charged offense beyond a reasonable

doubt, a rational trier of fact could have reasonably inferred that Cohen had not been given permission from the copyright holders to make and rent copies of their movies. One government witness, Charles Morgan, explained the idea of copyright as a way to recoup an investment already made in a copyrighted work, and he explained further that producers of motion pictures would not invest in film projects if they did not have an expectation of recovering their investment. Morgan's testimony, coupled with the collective appearance for the government of representatives from each of the motion picture studios which owned the copyrights to the films listed in the indictment, could have led to the inference that Cohen lacked permission to duplicate and distribute the already copyrighted works. Nothing in the record suggests that motion picture copyright holders *ever* grant permission to other persons to copy and distribute their products without receiving anything in return, let alone to video store owners, one of their most important markets.

 Cohen's second argument refers to a doctrine in copyright law known as the "first sale doctrine." This doctrine recognizes that copyright law does not forbid an individual from renting or selling a copy of a copyrighted work which was lawfully obtained or lawfully manufactured by that individual. The Sixth Circuit described the doctrine succinctly in *United States v. Sachs*, 801 F.2d 839, 842 (6th Cir.1986): "If the copyright owner has given up title to a copy of a work, the owner no longer has exclusive rights with respect to that copy." In sum, the "first sale doctrine" allows a video store to rent copies of videocassette movies to consumers who do not wish to own them—provided that the rented copies have been legally obtained through purchase, trade or gift.

The Sixth Circuit requires in a criminal copyright prosecution that the government prove that the allegedly infringing copies were unauthorized, and we have prescribed two ways for the government to satisfy its burden. The first method entails tracing the path of ownership from the copyright holder to the present holder and disproving the possibility that the copy came from a legitimate source. 801 F.2d at 843. The second method—and the one employed here and in *Sachs* consists of proving that the copy in question had an illegitimate origin. Most important, the Sixth Circuit held in *Sachs* that "the government's burden encompasses proving that the copies were unauthorized copies, but does not necessarily extend to disproving every conceivable scenario in which appellant would be innocent of infringement." *Id.* at 842–43.

 The government has met the standard required by *Sachs*. The witnesses from the motion picture studios holding the copyrights testified that both the videocassettes and the casing differed from the authorized copies. The technical experts presented by the government provided even more convincing evidence of the illegitimate origins of the videocassettes seized from Front Row Video. One expert, Ewing Layhew, testified that an original videocassette has only one set of electrical "switch-points" when viewed on a cross-pulse monitor, but that a copy of the original has multiple switch-points. He testified further that only twenty-one of the videocassettes listed in the indictment had one set of switch-points. In addition, another witness, Gordon Walker, testified that twenty of the twenty-one legitimate copies seized were discovered in Cohen's office near the six videocassette recorders. Linda Sheer, another technical expert, testified that she was able to determine that copies of the movie "Off Limits" could be segregated into three identifiable groups of five—consistent with the conventional copying arrangement of having six videocassette recorders wired together with one "master" producing five additional copies in six machines. Cohen did not challenge the methodologies of the tests undertaken by the government's technical experts, either. Taken together, the evidence suggests that the copies seized had illegitimate origins.

 Cohen also argues that the District Court erred in admitting into evidence a consent judgment from the companion civil

copyright infringement suit. Although he suggests that civil judgments are generally inadmissible as evidence in criminal cases, other circuits have admitted consent judgments into evidence in criminal trials under Federal Rule of Evidence 404(b) and its common law predecessor. *See United States v. Serian,* 895 F.2d 432 (8th Cir. 1990); *United States v. Parker,* 839 F.2d 1473 (11th Cir.1988); *United States v. Gilbert,* 668 F.2d 94 (2d Cir.), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 469 (1982); *United States v. King,* 505 F.2d 602 (5th Cir.1974); *New England Enterprises, Inc. v. United States,* 400 F.2d 58 (1st Cir.1968), *cert. denied,* 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969).[2] Here the consent judgment does not refer to a "prior act" countenanced by Rule 404(b), but it is relevant, not overly prejudicial and was accompanied by a limiting instruction which explained the different burdens of proof in civil and criminal matters. Although one commentator notes that admitting prior civil judgments into evidence in subsequent criminal trials may violate a defendant's right of confrontation, *McCormick on Evidence,* § 318 (1984 ed.), we think that Cohen's consent judgment can be characterized better as a personal admission properly admitted under Federal Rule of Evidence 801(d)(2)(A)[3] than as a civil judgment resulting from a jury or bench verdict. The question of burdens of proof never arose, and only Cohen's consent made the judgment conclusive. We have held elsewhere that it is a "familiar rule of evidence that any statement by a party may be offered against him by his opponent," and here Cohen agreed to be enjoined permanently from infringing the plaintiffs' copyrights. *United States v. Slone,* 833 F.2d 595, 601 (6th Cir.1987). *See also* 2 C. Wright, *Federal Practice and Procedure* § 413 (1982). The consent

judgment is analogous to testimony in a prior civil proceeding, and the admissibility of such testimony in criminal trials is well-settled. *See United States v. White,* 589 F.2d 1283 (5th Cir.1979); *United States v. Vecchiarello,* 569 F.2d 656 (D.C.Cir.1977); *United States v. Anderson,* 481 F.2d 685 (4th Cir.1973), *aff'd,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States v. Cecil,* 457 F.2d 1178 (8th Cir.1972); *Hale v. United States,* 406 F.2d 476 (10th Cir.), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765 (1969). Thus, even if we cannot characterize the consent judgment as a "judicial admission" which would eliminate the further need for evidence on the subject matter of the admission because the admitted facts are no longer at issue, the consent judgment offers probative evidence admissible under Rule 801(d)(2)(A). *See Ferguson v. Neighborhood Housing Services,* 780 F.2d 549 (6th Cir.1986).

■ Cohen argues that admission of the consent judgment was overly prejudicial to him, but we disagree. The evidence was clearly probative, and the District Court provided a specific limiting instruction to the jury with regard to the consent judgment. Our standard of review in determinations of this sort is "abuse of discretion," and the District Court did not abuse its discretion here. *United States v. Vance,* 871 F.2d 572 (6th Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

■ Cohen raises two other issues with regard to his sentence. First, he argues that the District Court erred when it enhanced his sentence under § 3B1.1(c)[4] of the Guidelines because he was neither the manager nor supervisor required by the section. The Sixth Circuit requires the participation of at least two culpable individu-

---

**2.** Cohen cites *United States v. Schneider,* 35 F. 107 (C.C.D.Or.1888), in support of his argument, but *Schneider* concerned the issue of whether the government was estopped from maintaining a *civil* action because the defendant had been acquitted in a criminal trial involving similar issues.

**3.** Federal Rule of Evidence 801(d)(2)(A) provides:

(d) A statement is not hearsay if—
(2) The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity.

**4.** § 3B1.1(c) [Aggravating Role] provides:

If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels.

als—the defendant and another person—before a sentence can be enhanced for a defendant's leadership activities. *United States v. Carroll*, 893 F.2d 1502 (6th Cir. 1990). The District Court found that Clinton Beach "clearly was acting at the directly [sic] of Mr. Cohen" when he printed labels for Cohen. *Joint Appendix* at 338. In addition, although Beach was not formally charged for his actions, the District Court found on the basis of Beach's trial testimony that he had engaged in culpable behavior. *Id.* at 336–7. Beach testified that he acted at the direction of Cohen, printed labels and knew that his behavior was wrong. The District Court's findings are subject to a "clearly erroneous" standard of review, and the District Court's findings were not clearly erroneous. *United States v. Perez*, 871 F.2d 45 (6th Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

■ Finally, Cohen argues that the District Court erred when it used the actual invoices reflecting the amount paid for the various legitimate videocassettes to determine the appropriate value of the infringing tapes for sentencing purposes. Cohen argues that the District Court should have used the lower prices reflected in a readily available retail catalog instead, but he did not offer any evidence to suggest that he purchased any videocassettes at the lower prices or that he was aware of the ZBS Industries catalog at all. Cohen offers a plausible argument, but we are limited to a "clearly erroneous" standard of review under *Perez*, and we find no clear error here. Accordingly, we AFFIRM Cohen's conviction and sentence.

KEITH, Circuit Judge, dissenting.

Because I believe that the district court erred in admitting into evidence a consent judgment from the companion civil copyright infringement suit, I respectfully dissent. Rule 408 of the Federal Rules of Evidence provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, *is not admissible to prove liability* for or invalidity of the claim or its amount.... This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408 (emphasis added). The Advisory Committee notes indicate that the exclusion is based on two grounds: (1) the settlement may be motivated by a "desire for peace" rather than an admission of liability and (2) public policy favors the promotion of compromise and settlement of disputes. I fear that this decision will have an unfortunate chilling effect upon civil settlement agreements.

Rule 408 permits the admission of a settlement agreement into evidence for purposes other than proving liability such as proving bias or prejudice of a witness, rebutting a contention of undue delay, or showing an effort to obstruct a criminal investigation or prosecution. Fed.R.Evid. 404; *see United States v. Hays*, 872 F.2d 582, 588 (5th Cir.1989). Notwithstanding the government's contentions to the contrary, the settlement agreement in the instant case was not admitted for any purpose other than proving liability.

Although the consent judgment does not contain an admission of liability or wrongdoing by William Cohen or Front Row Video, it is highly prejudicial to him on the basis of its several provisions. First, it provides that the civil plaintiffs shall recover the sum of $9000 as damages from the civil defendants. Second, the civil defendants are permanently enjoined from infringing copyrights and exclusive rights under copyright owned by, assigned to, licensed to, or otherwise held by the civil plaintiffs, including copying, reproducing, selling or renting motion picture video cassettes copyrighted by or licensed to the

plaintiffs. Third, the civil defendants are enjoined from the improper use of the plaintiffs' trade names, trademarks, and designations of origin of any of their motion pictures or videotapes. Finally, all video cassettes, materials and equipment seized by the United States marshal on June 8, 1989, were forfeited to the civil plaintiffs.

Unlike the majority, I do not accept the government attempt to cloak the consent judgment in terms of an "admission" and thereby utilize Rule 801(d)(2)(A) to circumvent Rule 408's proscription. Admission of the consent judgment permits the government to suggest that the defendant is guilty of the very conduct for which he is being tried. As the Fifth Circuit aptly stated in *Hays,* "It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendant[ ] had done nothing wrong, [he] would not have paid the money [pursuant to a settlement agreement]." 872 F.2d at 589.

Moreover, I do not believe that the district court's limiting instruction prevented the improper inference that the civil judgment established defendant's guilt in the criminal action. Although the district court instructed that the consent judgment was not proof that the defendant committed any of the crimes alleged in the indictment, it did not instruct the jury regarding the proper purpose for admitting the consent judgment. The district court merely distinguished the burden of proof in a civil case from that in a criminal case and stated, "[y]ou may give the consent judgment such weight as you decide it deserves in relation to this case." Joint Appendix at 302. In my view, this instruction was inadequate to preserve defendant's right to a fair trial. I, therefore, believe that the conviction and sentence should be reversed.