Alexander MacDONALD, et al.,
Plaintiffs–Appellants, Cross–
Appellees, (95–6028/6286)

v.

GENERAL MOTORS CORPORATION,
Defendant–Appellee/Cross–Appellant
(95–6030/6287).

Nos. 95–6028, 95–6030, 95–
6286 and 95–6287.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 23, 1996.

Decided April 3, 1997.

James M. Doran, Jr., Manier, Herod, Hollabough & Smith, Nashville, TN, S. Jerome Levy (argued and briefed), Todd M. Gascon, Levy, Leopold & Associates, Chicago, IL, for Alexander MacDonald, Joan MacDonald, Ofray Hall, Susan Stanfield, Peter Cannistra.

Hugh C. Griffin, Chicago, IL, Diane I. Jennings (argued and briefed), Thomas J. Burke, Jr., Lord, Bissell & Brook, Chicago, IL, Noel F. Stahl, Cornelius & Collins, Nashville, TN, for General Motors Corporation.

Before: MARTIN, Chief Judge; WELLFORD and MOORE, Circuit Judges.

MARTIN, C.J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (pp. 348–51), delivered a separate dissenting opinion as to parts II and III.

BOYCE F. MARTIN, Jr., Chief Judge.

At approximately 10:30 p.m. on October 29, 1987, six members of the University of Kansas debate team and three of their coaches were driving to a tournament in Georgia when a deer appeared in front of their van on an interstate highway near Clarksville, Tennessee. The driver, Philip Voight, a graduate student and a debate coach at the University of Kansas, had received his driver's license just a few months earlier. When Voight swerved to avoid the deer, the rear brakes of the van locked up, Voight lost control of the vehicle, and the van ran off the highway and rolled over several times before coming to rest. David MacDonald, a student and debate team member, died as a result of the accident. Another student, Peter Cannistra, was rendered a paraplegic. Two other passengers, Ofray Hall and Susan Stanfield, suffered substantial injuries but recovered fully.

Cannistra, Hall, Stanfield, and Mac-Donald's estate initially sued the University of Kansas and its employees, including Voight, alleging that their negligence caused the accident. The plaintiffs later added a claim against General Motors, alleging that it failed to advise the van's purchaser adequately regarding proper brake maintenance, and that the van was defectively designed because the rear wheels would lock before the front wheels under some braking conditions, thus making the vehicle "rear-biased."

Ultimately, the plaintiffs settled their claims against the University of Kansas and its employees and proceeded to trial against General Motors alone. On April 10, 1995, the jury returned a verdict in the plaintiffs' favor, finding General Motors one percent, and the University of Kansas and its employees ninety-nine percent at fault. The district court entered judgment on the verdict and denied the parties' motions for judgment as a matter of law and for a new trial.

On appeal, both the plaintiffs and General Motors raise objections to the district court's decision. The plaintiffs assert that the district court abused its discretion when it permitted General Motors to offer evidence of the negligence of the University of Kansas and its employees. The plaintiffs base this objection on their claim that certain remarks made during General Motors' opening statement constituted "judicial admissions" that should have excluded such evidence. In addition, the plaintiffs argue that the district court erred in applying the local law of Kansas rather than that of North Dakota to the measurement of damages for the Mac-Donalds' wrongful death claim, on the ground that all members of the MacDonald family were domiciliaries of North Dakota. In its appeal, General Motors asserts that the district court improperly denied its motion for judgment as a matter of law. For the reasons set forth below, we hold that the district court did not err in admitting the challenged evidence or denying General Motors' motion for judgment as a matter of law. However, we reverse the district court's decision to apply Kansas law to the measurement of damages for the MacDonalds' wrongful death claim, and remand with instructions to apply North Dakota law to that issue.

## I.

The first issue on appeal is the plaintiffs' challenge to the admission of certain evidence. During opening statements, General Motors' counsel made the following remarks:

[Voight] didn't do anything wrong in our estimation. He probably should have struck the deer or tried to brake in a

straight line rather than swerve to avoid it. He did probably what many and most of us would have done if the same emergency situation presented itself.

Let me suggest that we are not suggesting Phil Voight was negligent. What he did was probably predictable. Probably not appropriate.

Don't lose sight. It was an accident. It was an accident not the result of negligence or fault of General Motors or anybody else.

The next day of trial, the plaintiffs asked the court to bar General Motors from introducing any evidence of Voight's driving experience or negligence, on the ground that the above statements were judicial admissions that Voight was not negligent. The court denied the plaintiffs' request. Later in the trial, but prior to General Motors' case in chief, the plaintiffs made a similar request by written motion. It, too, was denied by the court. On appeal, the plaintiffs challenge these rulings.

■ We review the district court's determination as to whether a particular statement constitutes a judicial admission that excludes certain evidence under the abuse of discretion standard. *United States v. Cohen,* 946 F.2d 430, 435 (6th Cir.1991). In the context of an evidentiary ruling, an abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding the admission of evidence. *Nida v. Plant Protection Ass'n Nat'l,* 7 F.3d 522, 527 (6th Cir.1993). Applying this standard to the facts of the present case, we cannot say that the district court abused its discretion in finding that General Motors' remarks during opening statements were not judicial admissions, and therefore denying the plaintiffs' request to exclude evidence related to the challenged statements.

■ In order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous. *Oscanyan v. Arms Co.,* 103 U.S. 261, 263, 13 Otto 261, 26 L.Ed. 539 (1880). The statements of General Motors' counsel do not rise to this level. First, counsel used words such as "probably" and "suggesting" in making his comments, indicating that such remarks were guarded and qualified. Under the principles

set forth in *Oscanyan,* we are most reluctant to hold that such ambiguous statements constitute judicial admissions. As the *Oscanyan* court made clear, "[i]f a doubt exists as to the statement of counsel, the court will withhold its directions, as where the evidence is conflicting, and leave the matter to the determination of the jury." *Id.* at 263. *See also Koserkoff v. Chesapeake & Ohio Ry. Co.,* 427 F.2d 1049, 1054 (6th Cir.1970), *cert. denied,* 401 U.S. 947, 91 S.Ct. 924, 28 L.Ed.2d 230 (1971) (holding that "positive statement of fact" is required for a binding admission, not "contradictory statements").

■ Second, the statements were not deliberate waivers of the right to present evidence of Voight's and the University's negligence. The First Circuit has stated:

> Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede ... an alleged fact.... [C]onsiderations of fairness and the policy of encouraging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.

*United States v. Belculfine,* 527 F.2d 941, 944 (1st Cir.1975) (citations omitted). Under these principles, the district court was well within its discretion to conclude that General Motors' counsel's statements were not binding admissions. Counsel's remarks simply were not "deliberate voluntary waivers." During the same opening statement, counsel discussed Voight's lack of driving experience and explained that the plaintiffs had originally sued only Voight and the University of Kansas for negligence. Such comments are fundamentally at odds with any intent to waive the argument that Voight's negligence caused the accident. Our decision in *Harrison Construction Co. v. Ohio Turnpike Commission,* 316 F.2d 174 (6th Cir.1963) supports this conclusion. In *Harrison* we held that the Turnpike Commission's counsel's opening statement remarks regarding proximate causation did not constitute judicial admissions, on the ground that the remarks were inconsistent with the Commission's pleadings, evidence, and closing argument. *Id.* at 177.

Third and finally, General Motors' counsel's statements dealt with opinions and legal conclusions, and we are thus reluctant to treat them as binding judicial admissions. *See, e.g., New Amsterdam Cas. Co. v. Waller,* 323 F.2d 20, 24 (4th Cir.1963), *cert. denied,* 376 U.S. 963, 84 S.Ct. 1124, 11 L.Ed.2d 981 (1964). *See also Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir.1972) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case."). Determinations of negligence and proximate causation require the application of rules of law to complex factual patterns. Judicial admissions, in contrast, typically concern only matters of fact. Since General Motors' counsel's statements dealt with legal conclusions (i.e., whether Voight was negligent and whether he caused the accident), they do not, under the reasoning set forth in *Waller* and *Glick,* constitute binding judicial admissions. Were we to rule otherwise, we would be turning a valuable time-saving device, the voluntary use of which should be encouraged, into a trap for the unwary.

The district court was unpersuaded that the comments of General Motors' counsel were judicial admissions. In light of the weight of authority against the plaintiffs' position, we cannot say that the court abused its discretion when it refused to treat them as such and admitted evidence of Voight's and the University's negligence.

## II.

The next issue on appeal is the choice of law for the measurement of damages for the MacDonalds' wrongful death claim. The district court applied Kansas law, which limits non-pecuniary damages to $100,000.00. *See* Kan.Stat.Ann. § 60–1903 (1995). The MacDonalds argue that North Dakota law, which places no cap on damages, was more appropriate. *See* N.D.Cent.Code § 32–03.2–04 (1993). We review a district court's choice of law determination *de novo. Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

In a diversity action such as the present one, a federal court applies the conflicts law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.1188 (1938). Thus, we apply Tennessee law to determine whether the district court properly applied Kansas law to determine damages for the MacDonalds' wrongful death claim. Tennessee has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws (1971). *Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn. 1992).

Section 178 of the Restatement explains that "the law selected by an application of the rule of § 175 determines the measure of damages in an action for wrongful death." Restatement (Second) of Conflict of Laws § 178. Section 175, in turn, sets forth the foundation of the "most significant relationship test," and reads as follows:

§ 175. Right of Action for Death.

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 175.

Other relevant Restatement principles are set forth in sections 6 and 145, which are referenced by section 175 and which address, respectively, general choice of law principles and choice of law principles applicable to tort actions. The full text of these sections is as follows:

§ 6. Choice–of–Law Principles.

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

§ 145. The General Principle.

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws §§ 6, 145.

Under the Restatement approach, where wrongful death damages are at issue, the court applies the local law of the state where the injury occurred, unless some other state has a more significant relationship to the issue of damages, the occurrence and the parties. Restatement (Second) of Conflict of Laws §§ 175, 178 (1971). In the present case, the parties agree that the law of Tennessee, the state where the injury occurred, should not be applied because the location of the accident there was fortuitous. Thus, section 175 of the Restatement requires that we determine, with respect to the issue of damages, which other state has the most significant relationship to the occurrence and the parties. We do this by examining the contacts set forth in section 145 of the Restatement: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered. See *Hataway,* 830 S.W.2d at 59. We are guided in this analysis by general principles governing choice of law, including: the interests of each state in having its law applied; the relevant policies of the forum; certainty, predictability and uniformity of result; ease in the determination and application of the law to be applied; the promotion of interstate order; and the basic policies underlying the field of law. Restatement (Second) of Conflict of Laws § 6. *See also Hataway,* 830 S.W.2d at 59 (explaining that general principles of choice of law contained in section 6 of the Restatement guide the application of the "most significant relationship" test). A proper application of these factors shows that the law of North Dakota, not Kansas, should be applied to the measurement of damages for the Mac-Donalds' claim.

A simple examination of the contacts listed in section 145 is of little importance in the present case, as it points toward several different states. The injury occurred in Tennessee. The conduct causing the injury occurred in Tennessee, the site of the accident, and Michigan, the state where General Motors designed the van. The decedent was domiciled in North Dakota but was a resident of Kansas at the time of his death. The decedent's parents, the plaintiffs in this wrongful death suit, are domiciled and reside in North Dakota. General Motors' domicile is Delaware, Michigan is its place of incorporation and principal place of business, and it conducts business in Kansas, North Dakota, and Tennessee. The center of the relationship is Kansas: all persons in the van were residents of Kansas; the van was purchased, garaged, and maintained in Kansas by a Kansas organization; the passengers boarded the van in Kansas; and the trip was scheduled to terminate there as well. Thus,

the Restatement contacts point toward no one state in particular, but rather cover Tennessee, Michigan, North Dakota, Kansas, and Delaware.

At trial, General Motors argued, and the district court agreed, that Kansas was the state that had the most significant relationship with all aspects of the MacDonalds' wrongful death claim. General Motors based this assertion on the ground that where the contacts are scattered, the "center of the relationship" is the most important factor in making a choice of law determination. This premise is incorrect. The mere fact that contacts are scattered does not automatically heighten the importance of the "center of the relationship" contact. Here, Kansas may be the center of the relationship, but no other important contacts are located there: the decedent was a resident of Kansas, but his domicile remained in North Dakota. See Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) (noting that the center of the relationship may be the most important contact on *rare* occasions, such as when a plaintiff from state X is injured in a train accident while passing through state Y *and other important contacts are also located in that state*) (emphasis added). Instead, the Restatement makes clear that the court is to evaluate the contacts "according to their relative importance with respect to the particular issue," and that this is to be accomplished by carefully examining the policies behind the laws of the interested states and the interests of those states in the claim. Restatement (Second) of Conflict of Laws §§ 6, 145(2); § 145 cmt. e (1971). In this regard we emphasize that the Restatement specifically discusses the importance of domicile in determining choice of law for the measurement of damages in a wrongful death action. Comment b to section 178 explains, for example, that "[i]n a situation where one state is the state of domicil of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages." Restatement (Second) of Conflict of Laws § 178 cmt. b.

The parties agree that the first two contacts, place of injury and place of conduct (which point toward Tennessee and Michigan), should not be controlling here. Thus, we must examine the last two contacts to determine which state's law to apply to determine damages, giving due consideration to the policy concerns discussed above.

■ The third set of contacts—domicile, residence, nationality, place of incorporation and place of business of the parties—involves several states, including Delaware, Michigan, Kansas, and North Dakota. A person's "domicile" is his or her permanent and principal home, to which he or she intends to return whenever away. *Snodgrass v. Snodgrass,* 49 Tenn.App. 607, 357 S.W.2d 829, 831 (1961) (defining "domicile" as "the place 'where a person has his principal home and place of enjoyment of his fortunes; which he does not expect to leave, except for a purpose; from which when absent, he seems to himself a wayfarer; to which when he returns, he ceases to travel' ") (citations omitted). *See also Eastman v. Univ. of Michigan,* 30 F.3d 670, 672–73 (6th Cir.1990) (stating that a person's domicile is his or her "true, fixed, and permanent home and principal establishment" and is "the place to which he [or she] returns whenever ... absent") (citing Black's Law Dictionary 484 (6th ed. 1990)). In contrast, "residence" requires "physical presence and an intention to remain some indefinite period of time, but not necessarily permanently." *Id.* at 673 (citing Black's Law Dictionary at 1308–9). Under these definitions, North Dakota is the domicile of both David MacDonald and his parents. It is his parents' domicile because it is their established and permanent home. Likewise, North Dakota is David MacDonald's domicile because it was his domicile prior to college and there is no evidence that he ever intended to abandon it to establish a new domicile in Kansas, which is what he would have had to have done to change his domicile to that state. *See In re Conservatorship of Clayton,* 914 S.W.2d 84, 89 (Tenn. Ct.App.1995) (stating that to change domicile, a person must actually change his or her residence to a new place, intend to abandon his or her old domicile, and intend to establish a new domicile at the new residence).

That David resided in Kansas while in school thus does nothing to diminish the fact that North Dakota was his domicile.

While David MacDonald and his parents were clearly domiciliaries of North Dakota, we note, and General Motors makes much of the fact that David MacDonald, who was attending the University of Kansas, was technically a resident of Kansas at the time of his death. While we acknowledge David's connection to Kansas, we nonetheless find that the third set of Restatement contacts points to the law of North Dakota, where David and his parents were domiciled, rather than to Kansas, where David alone was merely a resident. This conclusion is based on our opinion that although residence is a factor in the third set of contacts, it is not as significant a factor as domicile. Not only is a person's connection to his or her domicile more substantial than any links he or she may have to his or her place, or places, of residence, but a state clearly has more of an interest in preserving the welfare of its domiciliaries—those persons who have made the state their true, fixed, and permanent home—than that of its residents—persons who live in the state without necessarily having any permanent connections there, and who are domiciled and may have residences in other states. Indeed, the Restatement itself suggests that domicile is the more important factor in the third set of section 145 contacts. See Restatement (Second) of Conflict of Laws § 178 cmt. b (emphasizing the importance of the domicile of the defendant, the decedent, and the beneficiaries in determining which state's wrongful death statute to apply to determine damages), § 145 cmt. d (noting that the state where interested persons are domiciled typically has the greatest interest in having its law applied to resolve a tort action). For these reasons, we find that David MacDonald's domicile—North Dakota—is a more important contact than his residence for purposes of applying the Restatement's most significant relationship test. Given that both David MacDonald and his parents were domiciliaries of North Dakota, we conclude that the third set of section 145

contacts suggests that North Dakota has the most significant relationship to the measure of damages for the MacDonald's wrongful death claim.

The fourth contact—the center of the relationship—points to Kansas. As noted earlier, all persons in the van lived in Kansas. The van was purchased, garaged, and maintained in Kansas by a Kansas organization, and the students and coaches boarded the van in Kansas for a trip that was to terminate in that state.

■■■ The third and fourth contacts thus point to the law of North Dakota and Kansas, respectively. To determine which of these contacts is more important, we first examine the policies behind the laws of these two states. Restatement (Second) of Conflict of Laws § 6, § 145 cmt. e (1971). See also In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973, 399 F.Supp. 1106, 1112 (D.Mass.1975) (noting that "[t]he policy underlying each statute is an important consideration in determining which state has the more significant connection with the issue"). North Dakota's wrongful death statute is designed to compensate the victim fully for both pecuniary and non-pecuniary loss. N.D.Cent.Code § 32–03.2–04 (1993). This purpose conforms with the policy of compensation underlying the theory of recovery in all tort actions. See Restatement (Second) of Conflict of Laws § 6 (1971) (stating that general choice of law principles include a consideration of the policies underlying the relevant field of law). In comparison, Kansas' wrongful death statute, Kan.Stat.Ann. § 60–1903 (1995), has two goals: compensating the victim's next of kin and eliminating excessive verdicts that can result from jury sympathy for the decedent's family. In an effort to balance these two goals, the statute imposes a $100,000.00 cap on non-pecuniary damages.[1] Given this limitation, Kansas' statute does not completely satisfy the goal of tort actions—to make the plaintiff whole.

Our next step is to evaluate the interests of Kansas and North Dakota in applying

---

1. The cap was added to the Kansas statute in an effort to alleviate a perceived crisis in the availability and affordability of liability insurance.

See Report on Kansas Legislative Interim Studies to the 1987 Legislature 568–9, 575 (Dec.1986).

their own laws to the measurement of damages for this particular wrongful death claim. Restatement (Second) of Conflict of Laws § 6, § 145 cmt. e (1971). North Dakota's interest is substantial. North Dakota is the domicile of both the decedent and his heirs, and it has a "strong interest in assuring that next of kin are fully compensated for the tortious death" of its domiciliaries. *Air Crash Disaster*, 399 F.Supp. at 1112. Significantly, the Restatement emphasizes the importance of applying the law of the state where interested persons are domiciled to determine damages in wrongful death and other tort actions. *See* Restatement (Second) of Conflict of Laws § 178 cmt. b (stating that where one state is the state of domicile of the defendant, the decedent, and the beneficiaries, the wrongful death statute of that state should ordinarily be applied to determine damages), § 145 cmt. d (noting that the state where interested persons are domiciled will typically have the "greatest interest in determining the extent to which each shall share in a tort recovery"). And while no Tennessee case has directly addressed the issue, other courts have held in wrongful death cases that the most important contact in the Restatement analysis is the domicile of the decedent or his or her heirs. In *Air Crash Disaster*, for example, residents of Vermont brought wrongful death claims arising out of an airplane crash that occurred in Massachusetts. *Id.* at 1107. The court, applying the most significant relationship test, determined that Vermont law should apply since the decedents were domiciled in Vermont and their next of kin were residents of Vermont. The court made this finding despite the fact that the accident occurred in Massachusetts and that the defendant did business in both Massachusetts and Vermont. *Id.* at 1112. The court noted that Vermont had a strong interest in assuring that next of kin were fully compensated for the deaths of its domiciliaries, while, on the other hand, Massachusetts' sole significant

contact was that it was the site of the accident. *Id.*[2]

As with Massachusetts' interest in the *Air Crash Disaster* claim, Kansas' interest in this claim is not as great as North Dakota's. Kansas does have an interest in ensuring that its residents are adequately compensated for their injuries, but this interest is adequately served by applying North Dakota law. Moreover, applying the Kansas statute would frustrate North Dakota's policy of fully compensating its domiciliaries for their injuries. And while Kansas also has an interest in protecting its residents from excessive jury verdicts, this interest is not as compelling in this case, where all residents of Kansas (the University, its employees, and Voight) who were defendants have settled and will not be affected by the jury's damages calculations. General Motors, of course, remains a party to the suit, and Kansas has an interest in protecting the automobile manufacturer from an excessive verdict, since that manufacturer does business within Kansas' borders. However, General Motors also does business in North Dakota, so there is no compelling reason to give greater weight to Kansas' interest in this matter. We therefore find that the domicile of the decedent and his survivors, rather than the center of the parties' relationship, is the most important contact in this application of the Restatement analysis. In keeping with this finding, we hold that the law of North Dakota, rather than that of Kansas, should be applied in determining damages for the MacDonalds' wrongful death claim.

We note that General Motors argues that the "center of the relationship" element should be the dominant factor in this application of the most significant relationship test, and thus that Kansas law should apply. In support of this argument, General Motors cites this Court's decision in *Bowman v. Koch Transfer Co.*, 862 F.2d 1257 (6th Cir. 1988). *Bowman* held, in applying the Restatement's test, that where an Ohio resident was killed in Illinois by a vehicle driven by an

2. We note that the *Air Crash Disaster* court also based its decision on the fact that Vermont was the center of the relationship between the parties. *Air Crash Disaster*, 399 F.Supp. at 1112. However, a close reading of the opinion in that case shows that the court found that the fact that most of the decedents and plaintiffs were domiciled and resided in Vermont was the more compelling contact. *See id.*

Illinois resident, and the only contact with Ohio was that the decedent was domiciled there and certain beneficiaries were domiciled (but did not live) there, Illinois law should be applied. *Id.* at 1262.

While *Bowman* may lend some support to General Motors' position, our decision here is not controlled by that case. The Restatement test is a fact-driven approach that necessarily varies from case to case, and the *Bowman* decision was not based on an analysis of the "center of the relationship" factor. *Bowman*, 862 F.2d at 1258–62. Moreover, even if we assume Illinois was the "center of the relationship" in *Bowman*, Illinois had several other contacts that made its law appropriate—contacts Kansas does not have in this case. Illinois was the site of the *Bowman* accident, *id.* at 1258, and all the defendants in *Bowman* were residents of Illinois. *Id.* at 1261. Furthermore, while the plaintiff-survivors in *Bowman* favored application of the law of Ohio, none of them lived in that state. *Id.* Here, in contrast, Kansas, the center of the relationship, was neither the site of the accident nor the residence of any of the remaining defendants, and the claimants reside and are domiciled in North Dakota, the state whose law they wish to have applied to determine damages for their wrongful death claim. The *Bowman* court favored Illinois law not simply because Illinois was the center of the parties' relationship,[3] but because Illinois had many other contacts with the occurrence and the claim—contacts which Kansas does not have with this dispute. Therefore, *Bowman* does not alter our conclusion that the district court should have applied North Dakota law, rather than that of Kansas, to determine damages for the MacDonalds' wrongful death claim.

### III.

We now turn to General Motors' appeal of the district court's denial of its motion for judgment as a matter of law pursuant to F.R.Civ.P. 50(b). General Motors' motion is based on a defense that arises under the Kansas Product Liability Act. The Act provides, in relevant part:

> When the injury-causing aspect of the product was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, the product shall be deemed not defective by reason of design or performance ... unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions.

Kan.Stat.Ann. § 60–3304(a) (1995).

General Motors asserts that it satisfied its initial burden of proving that the van was in compliance with the appropriate regulatory standard relating to design or performance, and thus that it was entitled to a rebuttable presumption that the van was not defective in design. Specifically, General Motors produced evidence, undisputed by the plaintiffs, that the braking system on the van successfully passed the brake performance testing mandated by the National Highway Traffic Safety Administration's Federal Motor Vehicle Safety Standard (FMVSS) 105, and thus fully complied with the applicable federal safety standards set forth in FMVSS 105. Under the Kansas Product Liability Act, argues General Motors, this compliance created a rebuttable presumption that the van did not suffer from a design defect, shifting the burden of proof to the plaintiffs to demonstrate that a prudent seller nevertheless could and would take additional precautions. At dispute in this appeal are two issues: first, whether FMVSS 105 regulates the injury-causing aspect of the van, and thus whether compliance with FMVSS 105 entitled General Motors to a rebuttable presumption of non-defectiveness under the Act, and second, whether the plaintiffs successfully rebutted this presumption by demonstrating that a prudent seller nonetheless could and would have taken additional precautions. The district court, in denying General Motors' motion for judgment as a matter of law, found that there was evidence upon which the jury

---

**3.** As noted above, it is not even clear whether the "center of the relationship" contact was a factor at all in the *Bowman* court's choice of law decision, as the court did not discuss this aspect of the Restatement test.

could have based its decision against General Motors on this matter. General Motors, of course, argues otherwise. Because we find that the jury could reasonably have concluded that FMVSS 105 did not relate to the injury-causing aspect of the van, and thus that General Motors was not entitled to a presumption of non-defectiveness, we hold, without reaching the issue of whether the plaintiffs successfully rebutted the presumption, that the district court properly denied General Motors' motion for judgment as a matter of law.

■■■ A federal court sitting in diversity applies the law of the state whose substantive law governs the action to determine whether a motion for judgment as a matter of law should be granted. *Siggers v. Barlow*, 906 F.2d 241, 247 (6th Cir.1990). Under Kansas law, a court, in ruling on a motion for judgment notwithstanding the verdict pursuant to Kan.Stat.Ann. § 60–250(c) (1995) (the equivalent of a F.R.Civ.P. 50(b) motion for judgment as a matter of law), must "resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied." *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, 1112 (1986). Thus, we will uphold the district court's denial of General Motors' motion unless, resolving all facts and inferences from the evidence in favor of the plaintiffs, we determine that reasonable minds could only conclude that General Motors was entitled to the statutory presumption of non-defectiveness and that plaintiffs failed to rebut that presumption. Given the evidence, however, it is impossible to reach this conclusion. Reasonable minds could differ as to whether General Motors was entitled to a presumption of non-defectiveness under the Act, and therefore General Motors' motion for judgment as a matter of law was properly denied by the district court. *Id.*

The plaintiffs presented testimony at trial that the regulation in question, FMVSS 105, does not even concern the issue of brake balance and stability (i.e., whether the brakes are front or rear-biased). Given that the Kansas statute creates a presumption that a product is non-defective only if the "injury-causing aspect of the product" is in compliance with a regulation, plaintiffs argue that the van's compliance with FMVSS 105 fails to create the presumption of non-defectiveness sought by General Motors, and thus that plaintiffs never had the burden of rebutting the presumption. General Motors claims that such differentiation is "metaphysical hairsplitting" on the ground that "brake stability" is a concept which does not even exist, and that FMVSS 105, the stated purpose of which is to provide standards for brake performance, necessarily encompasses standards for all aspects of brake performance, including so-called "brake stability." We address each of these criticisms in turn.

■■■ First, General Motors asserts that "brake stability" does not exist as a concept independent of brake performance, the focus of FMVSS 105. Thus, General Motors argues, the injury-causing aspect of the van necessarily falls within the scope of FMVSS 105 and General Motors' compliance with that regulation entitles it to a rebuttable presumption of non-defectiveness under the Act. The plaintiffs, however, point out that FMVSS 105 addresses only stopping distances and contains no specific standards for brake design as it relates to balance and stability. General Motors, in turn, challenges this assertion by noting that the regulation requires that all stops be made "without any part of the vehicle" leaving a twelve-foot wide roadway, and that it permits "locked wheels" at speeds greater than ten miles per hour during "spike stops." While General Motors may be correct in that "stability" of some sort may be encompassed by FMVSS 105, we find that reasonable minds could conclude, based on the evidence presented at trial, that FMVSS 105 did not relate to the injury-causing aspect of the van (the rear-bias problem) because it did not encompass brake design and stability, and thus that General Motors was not entitled to a rebuttable presumption of non-defectiveness under the Act.

■■■ Second, General Motors argues that since the stated purpose of FMVSS 105 is brake performance, the regulation necessari-

ly encompasses all aspects of brake performance, including brake stability. This reasoning is unpersuasive. The fact that FMVSS 105's formal purpose is brake performance does not mean that the regulation necessarily encompasses *all* aspects of brake performance. It is quite possible to conclude that FMVSS 105 covers only certain aspects of brake performance. The fact that FMVSS 105 primarily tests stopping distance (albeit with the requirement that the vehicle not leave a twelve-foot wide roadway during the test) lends credence to the notion that FMVSS 105 is something less than the all-encompassing brake performance standard General Motors claims it to be.

While it would be possible to conclude that FMVSS 105 did relate to the injury-causing aspect of the van, the jury was free to decide from the evidence, and inferences to be drawn therefrom, whether the FMVSS 105 standard was sufficient to create a presumption of non-defectiveness. Given the evidence presented, the jurors could reasonably conclude that the FMVSS 105 standard was inapplicable to the rear-bias problem, and therefore that the van could not be presumed non-defective under Kan.Stat.Ann. § 60–3304(a) (1995). Thus, we cannot say that the district court erred in denying General Motors' motion for judgment as a matter of law.

## IV.

For the foregoing reasons, we affirm the district court's decision to admit evidence relating to General Motors' opening statement remarks and its denial of General Motors' motion for judgment as a matter of law. However, because we have determined that the law of Kansas was inappropriate to determine damages for the MacDonalds' wrongful death claim, we reverse the district court's judgment and remand for further proceedings applying North Dakota law to that issue.

1. The majority opinion concedes that "the deceased was a *resident of Kansas* at the time of his death." (Emphasis added.) David had lived in Kansas for the vast majority of the time during the two years prior to his death, and this was the period of his adult life.

WELLFORD, Circuit Judge, dissenting.

While I am in agreement with part I of the majority opinion regarding the admission of evidence as to the negligence of driver Phil Voight and the University of Kansas, I must dissent from parts II and III for the reasons indicated.

### A. Choice of Kansas law as applicable to the wrongful death claim.

I differ with the other panel members in their application of North Dakota law to this claim. Mr. and Mrs. MacDonald sued as residents of Bismark, North Dakota, based upon diversity of citizenship. They allege that David was a "resident of the home of the Plaintiffs" when the fatal accident occurred in Tennessee. David MacDonald, however, and other plaintiffs who were passengers in the vehicle, clearly resided in Lawrence, Kansas, immediately before the accident as regular students or faculty at the University of Kansas, as the panel has concluded.[1]

The vehicle at issue was sold and delivered to the University of Kansas in Kansas for university use. It was operated, serviced, and kept in Kansas after its acquisition. The vehicle was manufactured in Canada.[2] At the time of the accident, MacDonald and the others were in the vehicle because of their status as University of Kansas students, and it was operated under the aegis of the University by a Kansas resident subject to University policies. Plaintiffs alleged that the vehicle (and specifically its brake system) was defectively maintained in Kansas by the University, contributing to its alleged unreasonably dangerous condition. It is clear that David MacDonald was traveling on a University function. The vehicle was en route to Georgia from Kansas, where the trip originated.

In an amended pretrial order submitted to the district court on June 22, 1992, defendant maintained "that Kansas law governs the trial and disposition of the case." In the

2. The majority opinion indicates that the vehicle in question was designed in Michigan.

final pretrial order, filed on February 1, 1995, any mention of that legal issue was omitted. Later that month, plaintiffs submitted a motion to apply North Dakota law to the measure of damages on the wrongful death claim. Plaintiffs conceded that "Kansas law will be used to determine liability and certain damages issues."

The parties agree with the district court that *Hataway v. McKinley,* 830 S.W.2d 53 (Tenn.1992), adopts as a conflicts of law rule the "most significant relationship" approach of the *Restatement (Second)* for wrongful death. In an affidavit submitted by plaintiffs, the deceased's brother averred that David paid non-resident tuition to Kansas and retained a North Dakota driver's license. The affidavit further set out that, after his second year at Kansas, David spent the summer of 1987 living in Minneapolis, Minnesota. It would thus appear that he spent most of his life, from the late summer or early fall of 1986 to the date of the accident, in Kansas and in Minnesota and away from North Dakota. The plaintiffs' position on applicability of North Dakota law rested almost entirely on the alleged domicile of the deceased and that of his parents. The district court, after consideration of the parties' positions, ruled that Kansas law should apply. I consider that the district court determined, as a matter of fact, that only the factor of domicile favored the plaintiffs' assertions. I would affirm the district court in its determination that Kansas, the state of residency and many other contacts, was the state with the most significant relationship.

I am of the opinion that the "center of the relationship" is the most important contact under the circumstances of this case pursuant to the *Restatement (Second) on Conflict of Laws.*[3] In this case, Kansas was "the center of the relationship," and the majority concedes this. The majority rested its position almost entirely on the importance of the state of domicile, relying on the reasoning in *In re Air Crash Disaster at Boston,* 399 F.Supp. 1106 (D.Mass.1975). It is important to note that in that case both the domicile

*and residence* of the plaintiffs was in Vermont, which was also the place of departure and the expected place of return on the ill-fated plane trip. *Air Crash Disaster,* 399 F.Supp. at 1112. These essential facts in *Air Crash Disaster, supra,* form a clear basis for distinguishing it from the instant case. The only similar circumstance was that the place of injury and death was mere "happenstance," and, therefore, Massachusetts law did not apply. *Id.* Vermont was also clearly in that case *the center of the relationship and had the most significant contacts.*

This court observed in *Bowman v. Koch Transfer Co.,* 862 F.2d 1257 (6th Cir.1988), a conflict of laws decision, that "[s]ection 145(2)(c) does not confine itself to consideration of the domicile of the parties, but extends itself to a consideration of their *residence." Id.* at 1262 (emphasis added). In *Bowman,* we determined that the most significant relationship was in Illinois, not in Ohio, the *domicile* of the plaintiffs. We emphasized, moreover, that plaintiffs had not actually lived in Ohio for one an one-half years. *Bowman* appears to me to be far more applicable to the facts of this case than *Air Crash Disaster, supra.* See also *Foster v. United States,* 768 F.2d 1278 (11th Cir. 1985) (holding that the law of residence, not the law of the domicile of the deceased parents, after a plane crash in Lake Michigan, should apply as to wrongful death damages under the "most significant contacts" test).

*Patten v. General Motors Corp.,* 699 F.Supp. 1500 (W.D.Okla.1987), also supports the conclusion that Kansas has the most significant relationship in this case. *Patten* emphasized the center of relationship test where the van in question, involved in a Colorado accident, "was titled in Oklahoma, owned by an Oklahoma Bank, and regularly used in Oklahoma by an Oklahoma resident, and was being used by Oklahoma residents at the time of the time of the accident." *Id.* at 1505. The center of the relationship of the parties was found to have great significance because of the scattered multistate contacts involved. Similarly, in our case,

---

**3.** I would agree with the majority opinion that the place of injury and place of conduct are less

important contacts here.

Kansas (conceded by the majority to be the state of residence, the "homeplace" of the vehicle, and the "center of the relationship") was unquestionably the state of the most significant relationship.

Furthermore, the Kansas and North Dakota statutes on wrongful death damages, in my view, deserve equal respect. I cannot agree that this court should adopt a policy to denigrate the Kansas statute which sets a $100,000 cap on non-pecuniary damages whereas the North Dakota statute does not. The Kansas notion of "eliminating excess verdicts that can result from jury sympathy" is neither an unsatisfactory nor an undesirable concept. Kansas surely has a significant interest in protecting its residents and its state university in the application of its wrongful death statute.

Considering the matter of policy of the Kansas law limiting non-pecuniary damages, I would find that Kansas has a declared interest in the measure of damages awarded in wrongful death cases where, as here, residents of Kansas were involved in an accident with a defendant that regularly conducted business in Kansas, and other individual defendants who were residents of and domiciled within Kansas. Kansas has a "strong interest" in its law limiting non-pecuniary damages, and the "fit" between the purpose of its law and "our facts is strong." *See In re Air Crash Disaster Near Chicago,* 644 F.2d 594, 625 (7th Cir.1981) (discussing *Restatement (Second)* §§ 6, 145, and comment c, denying punitive damages although the law of the domiciliary states of several decedents in the crash would have permitted such damages); *see also Bruce v. Martin–Marietta Corp.,* 418 F.Supp. 837, 839–40 (W.D.Okla.1975) (the law of the place of misconduct and defendant's place of business prevailed over the domicile of deceased plaintiffs' law in a conflicts of law situation involving *Restatement (Second)* in product liability suit), *aff'd,* 544 F.2d 442 (10th Cir.1976); *Bruce v. Martin–Marietta*

*Corp.,* 418 F.Supp. 829, 833 (W.D.Okla.1975) (arising out of same plane crash, holding that the law of the place where the plane was kept and maintained and place of business of defendant prevailed over law of domicile of deceased plaintiffs under the significant contacts test), *aff'd,* 544 F.2d 442 (10th Cir.1976).

The majority applies North Dakota law which "would compensate ... fully for both pecuniary and non-pecuniary loss," and would allow plaintiffs to realize a greater recovery than allowed under Kansas law, which would otherwise apply under the center of relationship test and the residency standard. Personal representatives in such situations under the majority rationale would be encouraged to move their domicile to the state affording the most generous recovery for wrongful death. *See Huang v. Lee,* 734 F.Supp. 71, 75–76 (E.D.N.Y.1990) (applying the law of the decedent's residence because of the "strong public policy [of New York] to 'specifically [limit] recovery in wrongful death actions to pecuniary damages'" (citation omitted)).

One of the bases for the mistaken decision of the majority is to refer to David MacDonald as "technically a resident of Kansas at the time of his death." The deceased was, in every sense, truly a resident of Kansas, and had been for some time, as were all of the others involved in the accident. The majority cites only *In re Air Crash Disaster at Boston,* a district court case, as favoring application of North Dakota law, a case distinguishable from the situation in the instant case. To apply the rule of domiciliary "control" as the majority does, with very little precedential support, would be to bring about different measures of damages if there had been two deaths among the Kansas residents involving persons domiciled in different states. This seems an illogical and unprincipled resulted where the center of relationship admittedly is established in Kansas.[4]

---

4. The majority cites *Restatement (Second),* Conflict of Laws, § 178 cmt. b, as emphasizing the importance of domicile. But that is so "[i]n a situation where *one state* is the state of domicile of *defendant,* the decedent and the beneficiaries." (Emphasis added.) North Dakota, of course, is *not* the state of domicile of the defendant, or any

original defendant. All parties were residents of Kansas. The majority opinion in another part refers to MacDonald as "merely a resident." Why is it more accurate to say that the deceased, who had been away from North Dakota most of his adult life, was "technically" or "merely" domiciled there? One wonders where he would

**B. Judgment notwithstanding the verdict.**

The majority observes that plaintiffs are not in disagreement that General Motors "was in compliance with the appropriate regulatory standard relating to design or performance" of the vehicle at issue. The majority also notes that defendant produced undisputed evidence "that the braking system on the van successfully passed the brake performance testing mandated by the National Highway Traffic Safety Administration" (Standard FMVSS 105).

To rebut the presumption following such facts under Kan.Stat.Ann. § 60–3304(a), the vehicle in question is deemed not to be defective "unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller *could and would* have taken additional precautions." *Miller v. Lee Apparel Company,* 19 Kan.App.2d 1015, 881 P.2d 576, 584 (1994) (emphasis added). Giving plaintiffs the benefit of their expert's disputed testimony, at best Dr. Limpert's testimony indicates his opinion, contrary to the opinion of others at least as well qualified in this regard, that General Motors could or might have improved the design "to be more 'front-biased,'" and that this would have been safer under the circumstances. Dr. Limpert was critical of the brake balance of many manufacturers, not just GM; he conceded that in tests of the vehicle in question both rears did not lock before the fronts and he was dissatisfied with standards for braking both in this country and in Europe. The proof was undisputed that no vehicle of this type in the world did or would meet Dr. Limpert's design notions.

The majority does not controvert the authority of *Miller.* As the *Miller* court held, "[t]estimony that a product 'could have been made a lot safer' or in alternate ways ... does not create a jury question under K.S.A. § 60–3304(a)." *Id.* 881 P.2d at 585 (citing *Jones v. Hittle Service, Inc.,* 219 Kan. 627, 631–32, 549 P.2d 1383 (1976)). The court added:

In *Goins v. Clorox Co.,* 926 F.2d 559, 562 (6th Cir.1991), the court examined a Ten-

nessee statute similar to K.S.A. 60–3304(a) and determined that on a motion for summary judgment the nonmovant must "'make a showing sufficient to establish the existence of an element essential to that party's case.'" It further held that a plaintiff who fails to introduce any evidence to challenge the defendant's compliance with federal regulations must be found to have failed to rebut the presumption that a product was not defective.

*Id.* 881 P.2d at 586. I would hold that plaintiffs and their expert "failed to overcome the presumption of nondefectiveness created by K.S.A. 60–3304(a)." *Id.* Reasonable and prudent factfinders could not, from the evidence presented, have found that plaintiffs established, as they must, that "a reasonably prudent manufacturer could and would have taken additional precautions by incorporating any of those safer alternatives into the manufacture" of the vehicle at issue. *Id. See also Garst v. General Motors Corp.,* 207 Kan. 2, 484 P.2d 47, 60 (1971): "One of the most significant factors is whether others in the field are using the same design ... [and] whether a safer design not yet in use is known to be feasible." The evidence produced at trial supports the conclusion that a prudent seller *would not* take any additional precautions, but this was deemed not to be enough without any reference to the *Garst* decision. I do not believe that reasonable minds could differ as to whether General Motors was entitled to the statutory presumption of non-defectiveness of the brake system.

I would hold that the federal standards on brake performance were clearly met by the defendant, and that plaintiffs failed to meet or establish proof sufficient to overcome General Motors' showing. I would, therefore, hold that the district court was also in error in not granting defendant's motion for judgment notwithstanding the verdict.

Accordingly, I **DISSENT** and would enter judgment for defendant under Kansas law.

have established domicile after graduation from  · the University of Kansas.