**Joseph Brian KERNKE,
et al., Plaintiffs,**

v.

**THE MENNINGER CLINIC,
INC. et al., Defendants.**

**Civil Action No. 00–2263–GTV.**

United States District Court,
D. Kansas.

Nov. 5, 2001.

Stephen G. Dickerson, Kugler & Dickerson, Kansas City, KS, Murray E. Abowitz, Kayce L. Gisinger, Abowitz & Rhodes, P.C., Oklahoma City, OK, for Joseph Brian Kernke, Joseph C. Kernke, Jr.

Curtis J. Waugh, Goodell, Stratton, Edmonds & Palmer, Thomas E. Wright, Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP. Topeka, KS, for The Menninger Clinic, Incorporated.

Marta Fisher Lineberger, Wayne T. Stratton, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for The Menninger Clinic, Incorporated, Edward L. Eaton, M.D., Joyce E. Davidson, M.D., Patricia Solbach, Ph.D.

Harvey L. Kaplan, Karen A. Brady, Patricia Jean Castellano, John F. Kuckelman, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Aventis Pharmaceutical Inc.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiffs bring this case alleging various claims against defendants Aventis Pharmaceuticals Inc. ("Aventis"), The Menninger Clinic, Inc., Edward Eaton, Joyce Davidson and Patricia Solbach ("Menninger defendants") arising from the death of Kenneth Kernke. Plaintiffs advance claims against Aventis for manufacturer's failure

to warn products liability, breach of express warranty, negligence and wrongful death. The case is before the court on Aventis's motion for summary judgment (Doc. 144). For the reasons set forth below, Aventis's motion is granted.

## I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in the light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Kenneth Kernke, the uncle of plaintiff Brian Kernke and the brother of plaintiff Joseph Kernke, lived with his parents in Oklahoma City, Oklahoma for most of his life. In 1988, Kenneth Kernke was diagnosed with schizophrenia. As a result of his mental illness, he often acted irrationally and was hospitalized several times in connection with attempts to commit suicide.

Kenneth Kernke's mother, who acted as his primary caretaker, died in April 1998. Following the mother's death, Brian Kernke assumed responsibility as Kenneth's primary caretaker. In June 1998, Brian Kernke, concerned that he was unable to effectively assist Kenneth with the necessities of daily living, called the Menninger Clinic in Topeka, Kansas to inquire about placing him in an assisted living program at the clinic. Shortly thereafter, Kenneth voluntarily admitted himself as an outpatient into Horizon House, the Menninger Clinic's supervised group living arrangement. Although his admission into Horizon House was voluntary, Kenneth repeatedly expressed to both Horizon House staff and Brian Kernke his desire to return home to Oklahoma City. At one point, he even packed his bags to leave Horizon House.

In August 1998, Kenneth Kernke voluntarily admitted himself as an inpatient into the Menninger Clinic's Hope Unit to take part in a clinical study of a new investigational drug for schizophrenia and schizoaffective disorders called M100907. Aventis's predecessor, Hoechst Marion Roussel, Inc. was the manufacturer of M100907.[1] The primary purpose of the M100907 clinical study was to test the safety and efficacy of M100907 in comparison to placebo and haloperidol, a neuroleptic drug already approved by the Food and Drug Administration ("FDA").

Prior to the commencement of the M100907 clinical study, Aventis submitted required protocols to the FDA for its review. The FDA approved the protocols and permitted Aventis to proceed with the study. Pursuant to FDA regulations, Aventis provided the Menninger defendants, who were acting as one of numerous M100907 study investigators, with an Investigational Drug Brochure and updated drug safety reports. The Investigational Drug Brochure, which contained the chemical and pharmacological information known about the drug at the time the study commenced (including all safety and efficacy results) contained warnings that, among other things, previous study participants had experienced worsening of schizophrenic symptoms, depression, suicidal thoughts and that one previous participant had committed suicide while using the drug. The Menninger defendants in turn promised Aventis that they would obtain informed consent from all study participants, that they had read and understood the Investigational Drug Brochure and that they would at all times exercise their independent medical judg-

---

**1.** The court will not specifically distinguish between Aventis and Hoechst Marion Roussel, Inc. in this opinion, but will collectively refer to both entities as Aventis.

ment as to the compatibility of a prospective study participant with the study protocol requirements.

After determining that Kenneth Kernke met the requirements for participation in the M100907/3001 ("Phase I") clinical study, the Menninger defendants obtained a signed Patient Information and Consent Form from him on August 10, 1998. Among other things, the informed consent form warned of the potential risks and hazards involved in participating in the study, including the worsening of schizophrenic symptoms, depression, suicidal thoughts and the fact that a previous participant had committed suicide. The informed consent form also warned Kenneth that because M100907 was an investigational drug, there might be risks involved in participating in the study that could not be predicted or anticipated.

During Phase I of the study, Kenneth Kernke received M100907, rather than the placebo or haloperidol. During the period of time that Kenneth participated in Phase I, he continued to inform Menninger staff members and Brian Kernke that he wanted to return home to Oklahoma City. Despite his desire to return home, Kenneth completed Phase I on October 9, 1998, and became eligible to participate in the M100907/3005 ("Phase II") clinical study, a two year continuation of the study in which all patients received M100907. After determining that Kenneth would benefit from participating in Phase II, the Menninger defendants obtained another signed informed consent form from him. The second informed consent form was identical in all relevant respects to the first form that he signed.

Three days after entering Phase II of the M100907 study, Kenneth Kernke walked away from the Menninger Clinic while on a return trip from the dining hall with a group of patients being escorted and supervised by a Menninger staff member. He was found dead in a wooded area near the Menninger Clinic three months later. The Shawnee County, Kansas coroner's report indicates that Kenneth probably died from exposure. He was 52 years old at the time of his death. Prior to Kenneth Kernke's death, Aventis did not have contact with either Kenneth Kernke, Brian Kernke or Joseph Kernke regarding Kenneth Kernke's care or treatment at the Menninger Clinic or his participation in the M100907 studies.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judg-

ment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## III. DISCUSSION

### A. Failure to Warn Claim

Aventis argues that plaintiffs' failure to warn claim fails because Aventis is absolved of liability under the learned intermediary doctrine and because plaintiffs have failed to demonstrate a causal connection between Aventis's alleged failure to warn Kenneth Kernke of the risks involved in taking M100907 and Kenneth's death. The court agrees and grants summary judgment to Aventis on plaintiffs' failure to warn claim.

■ 1. Learned Intermediary Doctrine Kansas law dictates that "[m]anufacturers of prescription drugs have a duty to warn of dangerous side effects and risks associated with use of such drugs." *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032, 1039 (1990) (citations omitted). Under the learned intermediary doctrine, a drug manufacturer fulfills its legal duty to warn a patient of the risks associated with using a prescription drug if it adequately warns the patient's prescribing physician of the risks. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1233 (10th Cir.2001) (applying Kansas law) (citations omitted). In

this case, Aventis argues that it is absolved of any liability for failure to warn Kenneth Kernke of the risks involved in taking M100907 because the uncontroverted material facts show that it provided adequate warnings to the Menninger defendants, who were Kenneth's physicians and were acting as learned intermediaries. The court agrees.

■ The first issue to address in the learned intermediary doctrine analysis is whether Aventis's warnings regarding the risks associated with using M100907 were adequate. Aventis argues that its warnings were adequate as a matter of law because M100907 was an experimental drug and the warnings complied in all relevant respects with applicable federal regulations governing experimental drug warnings. Plaintiffs do not dispute that Aventis's warnings complied with the applicable federal regulations. Under K.S.A. § 60–3304, a manufacturer's compliance with regulatory standards renders the manufacturer's product "not defective" unless the plaintiff can prove by a preponderance of the evidence that "a reasonably prudent product seller could and would have taken additional precautions." K.S.A. § 60–3304(a) (1994). The presumption of non-defectiveness under K.S.A. § 60–3304 applies to manufacturing, design and warning defects. *Miller v. Lee Apparel Co.*, 19 Kan.App.2d 1015, 881 P.2d 576, 585 (1994) (citing *Alvarado v. J.C. Penney Co.*, 735 F.Supp. 371 (D.Kan. 1990)). Because plaintiffs do not challenge Aventis's compliance with federal regulations, Aventis's warnings are presumed "not defective."

■ As noted, to overcome the presumption of the non-defectiveness of Aventis's warnings, plaintiffs must produce evidence that "a reasonably prudent product seller could and would have taken additional precautions." The record indicates that

Aventis warned, among other things, that study participants were at risk for worsening of schizophrenic symptoms, depression, suicidal thoughts and that a previous study participant had committed suicide while using M100907. The only evidence plaintiffs offer to challenge Aventis's warnings is the testimony of one of their expert witnesses, Dr. Bursztajn, who stated in his deposition that had he been advising Aventis on the warnings in this case, he would have told the company to exclude from the study patients such as Kenneth Kernke who suffered from both schizophrenia and depression because they were particularly fragile. Dr. Bursztajn does not testify, however, that a reasonably prudent product seller could and would have taken the additional precautions he suggested. His testimony, which, in essence, claims that Aventis's warnings could have been different, or perhaps stronger, does not create a jury question under K.S.A. § 60–3304. See *Miller*, 881 P.2d at 585 (citation omitted). The court concludes that Dr. Bursztajn's testimony is insufficient to defeat the presumption of the non-defectiveness of Aventis's warnings in this case.

▮ The second issue to address in the learned intermediary doctrine analysis is whether Aventis actually provided its warnings to the learned intermediary, the Menninger defendants. Although plaintiffs do not dispute that Aventis provided all relevant warnings to the Menninger defendants, they argue that the learned intermediary doctrine should not apply in this case because Aventis was allegedly on notice that the Menninger defendants' informed consent process was flawed, yet did nothing to correct it. Plaintiffs cite no case law to support their position and the court can find no reason to carve out such an exception to the learned intermediary doctrine. As noted by the Kansas Supreme Court in Humes, "[t]he learned intermediary rule allows a drug manufacturer to assume a patient places reliance on the physician's judgment and relieves the manufacturer of a duty to assist the physician in communicating with patients." 792 P.2d at 1039 (citation omitted) (emphasis added). In this case, Aventis provided adequate warnings regarding the M100907 drug study to the Menninger defendants. As a result, Aventis was entitled to rely on the Menninger defendants to properly relay the warnings to the drug study subjects, thereby relieving Aventis of any liability for failure to warn. For these reasons, the court grants summary judgment to Aventis on plaintiffs' failure to warn claim.

### 2. Proximate Cause

▮ Plaintiffs bring their failure to warn claim against Aventis under the Kansas Products Liability Act ("KPLA"), K.S.A. § 60–3301 et seq. To prevail on a failure to warn claim under the KPLA, a plaintiff must demonstrate that: (1) his injury resulted from a condition of the product; (2) the condition was unreasonably dangerous; and (3) the condition existed at the time the product left defendant's control. See *Samarah v. Danek Med., Inc.*, 70 F.Supp.2d 1196, 1202 (D.Kan.1999) (citing *Jenkins v. Amchem Prods., Inc.*, 256 Kan. 602, 886 P.2d 869, 886 (1994)) (emphasis added). "[A] products liability plaintiff may not recover absent proof that the allegedly defective product caused the injuries asserted by plaintiff." *Id.* at 1206 (citations omitted). Aventis argues that even if the learned intermediary doctrine does not apply to this case, summary judgment should be granted on plaintiffs' failure to warn claim because plaintiffs have not produced sufficient evidence to show that the alleged failure to warn of M100907's risks was the proximate cause of Kenneth Kernke's death. The court agrees.

Plaintiffs argue that causation is adequately established by the testimony of two of their expert witnesses. Specifically, plaintiffs point to the deposition testimony of Dr. Breggin, who stated that M100907 caused Kenneth Kernke to develop akathisia, which played a major role in his discomfort and ultimate absconding from the Menninger Clinic. Plaintiffs also rely on the deposition testimony of Dr. Bursztajn, who stated that the potential lack of efficacy of M100907 and the side effects of the drugs were major stressors that led to Kenneth's leaving the Menninger Clinic and his ultimate death. Plaintiffs' reliance on the testimony of Drs. Breggin and Burzstajn is misplaced. Specifically, the doctors' testimony fails to address the nexus between Aventis's alleged failure to warn of the drug's risks and Kenneth's death. Rather, Dr. Breggin's and Dr. Burzstajn's statements focus on the alleged connection between Kenneth's ingestion of M100907 and his death. Though such testimony might be worthy of consideration in a manufacturing or design defect case, it is irrelevant in a failure to warn case such as this.[2] As a result, the court finds plaintiffs have failed to establish the essential element of causation in their failure to warn claim against Aventis. For that reason also, the court grants summary judgment to Aventis on plaintiffs' failure to warn claim.

## B. Breach of Express Warranty Claim

Aventis argues that plaintiffs' breach of express warranty claim fails because plaintiffs have produced no evidence of any express warranties or misrepresentations and because plaintiffs have failed to demonstrate a causal connection between Aventis's alleged warranties or misrepresentations and Kenneth Kernke's death. Plaintiffs concede in their response to Aventis's motion for summary judgment that they have produced no evidence of express warranties or misrepresentations in this case. As a result, the court concludes that plaintiffs have failed to establish an essential element of their breach of express warranty claim and, therefore, grants summary judgment to Aventis on that claim.

## C. Negligence Claim

To prevail on a negligence claim under Kansas law, a plaintiff must show that the defendant owed a duty to the plaintiff, the defendant breached the duty, the plaintiff suffered an injury, and there was a causal nexus between the duty breached and the injury suffered. *Napell v. Aten Dep't Store, Inc.*, 115 F.Supp.2d 1275, 1278 (D.Kan.2000) (citing *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128, 1136 (1992)). Aventis argues that plaintiffs' negligence claim fails because plaintiffs have failed to establish that Aventis owed Kenneth Kernke any of the duties alleged or that Aventis's alleged breach of those duties caused his death. The court agrees that plaintiffs have not shown that Aventis owed any of the duties alleged and, therefore, grants summary

---

**2.** The court notes that Aventis is similarly guilty of focusing on the nexus between Kenneth Kernke's ingestion of M100907 and his death, as opposed to the nexus between Aventis's alleged failure to warn Kenneth of the risks related to M100907 and his death. Aventis's misplaced focus is especially apparent in its reply brief and in a letter sent to the court on October 29, 2001—a date well beyond the time the court believes it appropriate to supplement a motion for summary judg-

ment—which asks the court to focus on an alleged admission made by plaintiffs that "there is no present claim in this case that M100907 was toxic, poisonous or deleterious to Kernke." Indeed there is not, which is precisely the reason that testimony and argument related to Kenneth's ingestion of M100907—and the alleged effect it had on him—is wholly irrelevant to plaintiffs' failure to warn claim.

judgment to Aventis on plaintiffs' negligence claim on that basis.

In their complaint, plaintiffs allege Aventis owed Kenneth Kernke the following three duties: (1) to determine whether the benefit to Kenneth in allowing him to participate in the M100907 drug study outweighed the risks to him in ingesting the drug; (2) to secure informed consent from Kenneth; and (3) to supervise Kenneth while he participated in the study. Aventis contends that all of the alleged duties advanced by plaintiffs rest with the Menninger defendants as the investigators of the M100907 drug study, and not with Aventis as the sponsor of the study. The court agrees.

Pursuant to the directive of the United States Congress in the Federal Food, Drug and Cosmetic Act, a study involving the use of an investigational drug such as M100907 is governed by regulations issued by the FDA. See 21 U.S.C. § 355(i) (1994). According to the FDA regulations, an investigator-in this case the Menninger defendants—is defined as "an individual who actually conducts a clinical investigation (i.e., under whose immediate direction the drug is administered or dispensed to a subject)." 21 C.F.R. § 312.3(b) (2001). On the other hand, a sponsor-in this case Aventis-"does not actually conduct the investigation unless the sponsor is a sponsor-investigator." [3] Id. All of the duties alleged by plaintiffs in this case fall within the purview of the Menninger defendants as the investigator conducting the M100907 study; the duties do not rest with Aventis. See id. § 312.60 (stating that investigators are responsible "for protecting the rights, safety, and welfare of subjects under the investigator's care"); id. § 50.20 (placing the responsibility for obtaining informed consent with the investigator); see also *Humes*, 792 P.2d at 1039 (citations omitted) (stating that it is the physician's duty to determine whether a drug should be administered to a patient in light of the patient's susceptibilities and the drug's propensities); *Gile v. Optical Radiation Corp.*, 22 F.3d 540, 543 (3d Cir. 1994) (citations omitted) (holding that informed consent is the duty of the physician and not the manufacturer); *Anderson v. George H. Lanier Mem. Hosp.*, 982 F.2d 1513, 1516–17 (11th Cir.1993) (same). For that reason, the court grants summary judgment to Aventis on plaintiffs' negligence claim.

Because the court grants summary judgment to Aventis on the basis that Aventis did not owe the duties alleged to Kenneth Kernke, the court does not deem it necessary to also address Aventis's proximate cause argument.

### D. Wrongful Death Claim

Because the court grants summary judgment to Aventis on all of plaintiffs' other claims, the court also grants summary judgment to Aventis on plaintiffs' wrongful death claim since plaintiffs cannot show that Aventis committed any wrongful acts or omissions in this case.

### E. Aventis's Other Arguments

Finally, Aventis advances several other arguments in its motion for summary judgment relating to either damages or Brian Kernke's or Joseph Kernke's ability to recover on certain claims. However, because the court grants summary judgment to Aventis on all claims plaintiffs have asserted against the company, the court finds it unnecessary to address Aventis's additional arguments.

---

**3.** The court notes that Aventis was not acting as a *sponsor-investigator* in this case. In fact, the record indicates that Aventis had delegated most of its duties as a sponsor of the drug study to Worldwide Clinical Trials, Inc., a nationally-known contract research organization hired by Aventis to monitor the North American clinical studies involving M100907.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Aventis's motion for summary judgment (Doc. 144) is granted. Accordingly, Counts I, II and III of plaintiffs' complaint are dismissed in their entirety, Count XV of plaintiffs' complaint is dismissed as to defendant Aventis only, and defendant Aventis is dismissed from this case.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**